In re BENSEL et al., Board of Water Supply.

CITY OF NEW YORK v. SAGE.

(Circuit Court of Appeals, Second Circuit. July 15, 1913.)

No. 68.

1. REMOVAL OF CAUSES (§ 35*)—FEDERAL COURTS—CONDEMNATION PROCEEDINGS—COMMENCEMENT—OWNERSHIP OF PROPERTY.

Since proceedings by New York City to condemn land for a water reservoir were not commenced when maps were filed in the clerk's office of Ulster county, where the land was located, and notices posted on the property and published in newspapers, nor until the petition was actually filed in the state court, the land having been conveyed, prior to the filing of the petition, and subsequent to the filing of the maps, etc., to claimant, who was a citizen and resident of New Jersey, it sufficiently appeared that at the time the proceeding was commenced it involved a controversy between citizens of different states, and was therefore removable to the federal court.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 77, 78; Dec. Dig. § 35.*

Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

2. REMOVAL OF CAUSES (§ 102*)—REMAND—GROUNDS.

Where land sought to be condemned for public use was conveyed to a nonresident before condemnation proceedings were instituted, and neither fraud nor collusion was charged, the proceedings to assess damages, having been removed to the federal court, could not be remanded on the ground that the conveyance to claimant was made to create jurisdiction in the federal court for the sole purpose of securing a tribunal where a more liberal rule of damages obtained than in the state court.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 218–220, 223, 224; Dec. Dig. § 102.*]

3. EMINENT DOMAIN (§ 134*)—CONDEMNATION PROCEEDINGS—DAMAGES—SEPARATE AWARD—AVAILABILITY AND ADAPTABILITY.

Where land sought to be condemned for a reservoir site to afford a water supply for New York City was particularly adaptable and available therefor, and had been so recognized for many years, there being evidence that the site would inevitably at some time be appropriated, if not by New York, by some other city or group of cities, to furnish a water supply, it was not error to allow a separate award in addition to the value of the land for availability and adaptability.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 356; Dec. Dig. § 134.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Application and petition of John A. Bensel and others, constituting the Board of Water Supply of the City of New York, to acquire real estate for and on behalf of the city under Laws N. Y. 1905, c. 724, and amendatory acts, in the town of Hurley, Ulster county, N. Y., to provide an additional water supply. From an order awarding damages for a certain parcel of land belonging to William Sage, Jr. (In re Ashokan Dam, 190 Fed. 413), condemned for a reservoir, the City of New York brings error. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

On writ of error to the Circuit Court of the United States for the Southern District of New York to review an order confirming awards made by commissioners of appraisal for certain land, known as Parcel No. 733, Section 15, Ashokan Reservoir, owned by William Sage, Jr. The commissioners allowed him $7,624.45 for the land and buildings thereon and the further sum of $4,324.45 for reservoir availability and adaptability, amounting in the aggregate to $11,948.90, with 5 per cent. on the total amount to ·cover counsel fees and expenses. The plaintiff in error also seeks to review an order made by the Circuit Court refusing to remand the proceedings to the Supreme Court of the state of New York held in and for Ulster county.

The argument in this court took place on November 14, 1912, but the decision was withheld pending the action of the Supreme Court in McGovern v. City of New York, 229 U. S. 363, 33 Sup. Ct. 876, 57 L. Ed. ——, previously argued. The decision in the McGovern Case was announced June 9, 1913.

Archibald R. Watson, of New York City (William McM. Speer and Louis C. White, both of New York City, of counsel), for plaintiff in error.

Edward A. Alexander, of New York City, for defendant in error.

Before COXE and WARD, Circuit Judges, and HOLT, District Judge.

COXE, Circuit Judge. Two principal questions are involved in this review:

First. Were the condemnation proceedings properly removed to this court?

Second. Were the commissioners and the court in error in adding to the sum awarded for the value of the land and buildings, viz., $7,624.45, the further sum of $4,324.45, for reservoir availability and adaptability?

[1] We think the proceedings were properly removed to this court and that the motion to remand to the state court was properly denied. William Sage, Jr., the claimant and defendant in error, was at the time of the commencement of the proceedings to condemn his property and since has been a citizen of New Jersey, residing at Orange, Essex county, in that state. The city of New York is a municipal corporation created by the state of New York and the members of the board of water supply of the city are all citizens and residents of New York. We have, then, a controversy which is wholly between citizens of different states and we see no reason why it was not removable on April 29, 1910 to the Circuit Court of the United States for the Southern District of New York. It is urged that Sage did not obtain title to the land in question until May 17, 1909, when the deed to him was executed, and that proceedings to condemn the land had been instituted prior to this date. This argument rests upon the contention that the proceedings to acquire the land in question were commenced when maps were filed in the clerk's office of Ulster county and notices posted on the property and published in newspapers. We are convinced that the proceeding was not commenced until the petition had been actually filed in the state court and this was done after the deed to Sage had been executed and recorded. As pointed out by Judge Noyes, the filing of maps and the publishing of notices did not commence any legal

proceedings, but at best only indicated an intention so to do. That intention might be abandoned or modified and no actual proceeding to acquire the land in question was commenced until the petition was filed.

[2] The only reason urged for remanding the case in the brief of the plaintiff in error is that the land in question was transferred to a nonresident for the purpose of creating jurisdiction in the federal courts. Neither fraud nor collusion is charged, but it is asserted that after the state court had obtained jurisdiction the controversy was removed for the sole purpose of securing a tribunal where a more liberal rule of damages obtains than in the New York courts. This contention cannot be sustained for the reason, already pointed out, that the land was purchased by the defendant in error before the condemnation proceedings were begun in the state court. We cannot indulge in conjecture or guesswork. For aught that appears in the record the sale to William Sage, Jr., was a perfectly fair, honest and legitimate one.

[3] The second, and principal, question is, was the court justified in awarding an additional sum of $4,324.45 because of the availability and adaptability of the land for reservoir purposes? The answer to this question depends largely upon whether we are to be controlled by the rule of the state or the United States courts. The McGovern Case throws very little, if any, light upon the present controversy. Although the same question was involved, it was decided adversely to the contention of the land owner by the commissioners, by the Supreme Court and by the Court of Appeals of New York, which courts sustained the ruling of the commissioners, refusing to admit testimony as to the exceptional value of the land for a reservoir site. The claimant thereupon sued out a writ of error, insisting that the refusal to hear the testimony was in effect depriving him of his property without due process of law, contrary to the fourteenth amendment of the Constitution of the United States. The Supreme Court decided that the record did not show that the plaintiff in error had been deprived of his property without due process of law, even if it be assumed that it was error to exclude the proffered evidence.

Although there are expressions in the opinion which, perhaps, indicate that the court regarded the ruling of the state court correct, the question now in issue was not decided. The opinion concludes as follows:

"We are satisfied on all the authorities that whether we should have agreed or disagreed with the commissioners, if we had been valuing the land, there was no such disregard of plain rights by the courts of New York as to warrant our treating their decision made without prejudice, in due form and after full hearing, as a denial by the state of due process of law."

The question here is not whether the property of the defendant in error has been taken without due process of law, but whether the commissioners and the Circuit Court erred in allowing the defendant in error damages based upon the availability of his land for reservoir purposes. The award was made by commissioners appointed by the state court prior to the removal, and, had the amount of $11,948.90 been awarded for the value of the land, buildings and quarry, it would

not, in view of the testimony, have been exorbitant. However, the separate award of $4,324.45 for reservoir availability and adaptability makes it necessary for us to consider the question as stated above.

That the Ashokan site is peculiarly suitable for reservoir purposes cannot be disputed. Indeed, it may almost be said that it is the only available location for a reservoir from which the great city of New York can be supplied with an abundance of pure water. Located, as the city is, on a narrow peninsula, between two tidal rivers, it is evident that the choice of sites which the state can control is an exceedingly limited one. A glance at the map seems to demonstrate the proposition that the supply of water for such an immense number of people must come from a reservoir located west of the Hudson and above the New Jersey line. The Ashokan site could not escape the attention of a competent engineer employed to make the selection. The process of exclusion would inevitably bring him to the Esopus watershed. Its availability for furnishing New York with pure water was appreciated 14 years ago, when the Ramapo Company was organized for the purpose of selling the water in question, not only to the city of New York, but to other cities of the state located on both banks of the Hudson. The availability of the Ashokan site induced the city of Kingston to make a careful examination of its capacity for furnishing a supply of water to that city. In short, without entering further into details, it can hardly be disputed that the Ashokan site was the natural place for the reservoir which is to supply the fast increasing multitude of people who dwell on both sides of the Hudson, and that this availability had been proved and was publicly known long before the city of New York instituted these proceedings. It must have been evident to all intelligent land owners that their property would, in the near future, inevitably be acquired as part of an immense water system. That this demand increased the value of these lands follows as a necessary conclusion. To value them only according to the tons of hay or the bushels of potatoes they produce, ignores the other element of value, namely, that their possession was necessary in order that water might be furnished to the increasing millions along the banks of the Hudson. We are not at all convinced that, with the question presented upon the testimony in this record, the state courts would have decided as they did in the cases reported in Matter of Simmons, 130 App. Div. 350, 356, 114 N. Y. Supp. 571, affirmed 195 N. Y. 573, 88 N. E. 1132. Thus, in the opinion confirming the award of the commissioners relating to parcel 271-A the court says:

"It is true that he (the owner) is not limited in compensation to the use which he makes of his property, but is entitled to a fair market value, for any use to which it is adapted by virtue of its location and for which it is available. * * * The value of property is not limited by the present use or the use for which it is sought, as either may be more or less than its market value. For example, land may be valuable, abstractly considered, for reservoir purposes, but its market value would depend upon a demand for such a purpose. If no one desired the property for a reservoir, its value might be much less than for any other purpose. * * * No evidence was given in the present case tending to show that before the land was taken by the city it was regarded as more valuable because of its advantage of location and adaptability for use as a reservoir."

Again, on the appeal from the order of confirmation as to section 6, the Appellate Division said:

"The appellant did not prove or attempt to prove that the value of the property in question or any of the property included in the reservoir site, had been increased by its adaptability or availability for reservoir purposes before the commencement of this proceeding. There is no shadow of evidence of any prior demand for the property as a reservoir site or of any customer who would give more for it for that purpose, or of any circumstance by which the value of the parcel in question as a part of a natural reservoir site, could be estimated or determined."

Such evidence has, we think, been given in the case at bar—evidence from which the presumption follows, almost as a conclusion, that with the increase of population in the valley of the Hudson, the Ashokan site would inevitably be appropriated, if not by New York, then by some other city or group of cities.

There is in the present case evidence that the Ashokan site had long been known and its availability as a great reservoir recognized by experts and business men and efforts to acquire it had from time to time been made. If the state courts had passed upon the identical question presented by the evidence in the case at bar, we might feel constrained, in the absence of a controlling authority of the Supreme Court, to follow their decision, but, for the reasons just stated, we cannot find that they have passed upon the precise question involved in the cases relied on by the plaintiff in error. In these circumstances we deem it our duty to follow the case of Boom Company v. Patterson, 98 U. S. 403, 25 L. Ed. 206, which holds, in substance, that the value of the land in question is increased because of its availability as a reservoir site. Patterson owned some islands in the Mississippi river about an eighth of a mile from its western bank; when connected with the mainland a boom of immense capacity for holding logs was formed which was of great value to the company. The islands were worth about $300, but their availability for forming, in connection with the mainland, a receptacle in which millions of logs could be stored added to their value about $5,000 and a judgment for $5,500 was affirmed. The Supreme Court held that the adaptability of the islands for boom purposes added greatly to their value and was properly considered in estimating the value of the land. See also Great Falls Mfg. Co. v. U. S., 16 Ct. Cl. 160, affirmed 112 U. S. 645, 5 Sup. Ct. 306, 28 L. Ed. 846; Matter of Gilroy, 85 Hun, 424, 32 N. Y. Supp. 891; In re Gough, L. R. 1 K. B. 417.

We have examined the other assignments of error and are of the opinion that none of them requires a reversal of the orders.

The orders are affirmed.