COUNTY OF ALLEGHENY *v.* FRANK MASHUDA CO. ET AL.

No. 347.   Argued April 2, 1959.—Decided June 8, 1959.

186

*Philip Baskin* argued the cause for petitioner. With him on the brief were *Maurice Louik* and *Francis A. Barry*.

*Harold R. Schmidt* argued the cause for respondents. With him on the brief were *Don Rose* and *John L. Laubach, Jr.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

This case presents the question whether a District Court may abstain from exercising its properly invoked diver-

sity jurisdiction in a state eminent domain case in which the exercise of that jurisdiction would not entail the possibility of a premature and perhaps unnecessary decision of a serious federal constitutional question, would not create the hazard of unsettling some delicate balance in the area of federal-state relationships, and would not even require the District Court to guess at the resolution of uncertain and difficult issues of state law. We hold that in such circumstances a District Court cannot refuse to discharge the responsibility, imposed by Congress under 28 U. S. C. §§ 1332 and 1441, to render prompt justice in cases where its diversity jurisdiction has been properly invoked.

The Board of County Commissioners of Allegheny County, Pennsylvania, invoked the applicable eminent domain statutes of the State to appropriate certain property of respondents, citizens of Wisconsin, for the alleged purpose of improving and enlarging the Greater Pittsburgh Airport. The Board adopted the required resolution of taking, and thereafter petitioned the Court of Common Pleas of Allegheny County for appointment of a Board of Viewers to assess damages for the taking. A Board of Viewers was convened and awarded the respondents $52,644 in compensation for their property. Both parties appealed this award to the Common Pleas Court pursuant to the state procedure, and that proceeding is now pending. Subsequent to the time when the County obtained possession respondents learned that their property had been leased to Martin W. Wise, Inc., allegedly for its private business use. The applicable Pennsylvania substantive law is clear: "It is settled law in Pennsylvania that private property cannot be taken for a private use under the power of eminent domain." *Philadelphia Clay Co.* v. *York Clay Co.*, 241 Pa. 305, 308, 88 A. 487; see also *Winger* v. *Aires*, 371 Pa. 242, 89 A. 2d 521; *Lance's Appeal*, 55 Pa. 16.

On the basis of this settled law respondents brought suit in the United States District Court for the Western District of Pennsylvania, alleging that "at the time of the taking the only definite plan and purpose of the County with regard to said land was that the same would be leased to defendant Martin W. Wise, Inc. for the benefit of the said lessee and for no public use," and seeking a judgment of ouster against the County and Martin W. Wise, Inc., damages, and, in the alternative, an injunction restraining the County from proceeding further in the pending state court damage proceeding.[1] The District Court, although recognizing that its diversity jurisdiction had been properly invoked, dismissed the suit on the ground that it "should not interfere with the administration of the affairs of a political subdivision acting under color of State law in a condemnation proceeding." 154 F. Supp. 628, 629. The Court of Appeals reversed, holding that a challenge to the validity of a taking such as respondents make in this case may, and perhaps must, be brought in an independent suit different from the Board of Viewers proceeding to assess damages, and that such an independent suit based on diversity of citizenship could therefore be maintained in the District Court. 256 F. 2d 241. We granted certiorari because of the important question presented as to whether the District Court had discretion to abstain from the exercise of jurisdiction in the circumstances of this case. 358 U. S. 872.

The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only

_____
[1] The prayer for injunctive relief was expressly abandoned in oral argument before this Court.

in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest. Since no exceptional circumstances justifying abstention appear in this case we think that the Court of Appeals was correct in holding that the District Court should have adjudicated the respondents' claim.

This Court has sanctioned a federal court's postponement of the exercise of its jurisdiction in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law. See, e. g., *City of Meridian* v. *Southern Bell Tel. & Tel. Co.*, 358 U. S. 639; *Government Employees Organizing Comm.* v. *Windsor*, 353 U. S. 364; *Leiter Minerals, Inc.*, v. *United States*, 352 U. S. 220; *Albertson* v. *Millard*, 345 U. S. 242; *Shipman* v. *DuPre*, 339 U. S. 321; *Stainback* v. *Mo Hock Ke Lok Po*, 336 U. S. 368; *American Federation of Labor* v. *Watson*, 327 U. S. 582; *Alabama State Federation of Labor* v. *McAdory*, 325 U. S. 450; *Spector Motor Service, Inc.*, v. *McLaughlin*, 323 U. S. 101; *Chicago* v. *Fieldcrest Dairies, Inc.*, 316 U. S. 168; *Railroad Comm'n of Texas* v. *Pullman Co.*, 312 U. S. 496. But there are no federal constitutional questions raised in this case.

This Court has also upheld an abstention on grounds of comity with the States when the exercise of jurisdiction by the federal court would disrupt a state administrative process, *Burford* v. *Sun Oil Co.*, 319 U. S. 315; *Pennsylvania* v. *Williams*, 294 U. S. 176, interfere with the collection of state taxes, *Toomer* v. *Witsell*, 334 U. S. 385, 392; *Great Lakes Dredge & Dock Co.* v. *Huffman*, 319 U. S. 293, or otherwise create needless friction by unnecessarily enjoining state officials from executing domestic policies, *Alabama Public Service Comm'n* v. *Southern R. Co.*, 341 U. S. 341; *Hawks* v. *Hamill*, 288 U. S. 52. But adjudication of the issues in this case by the District Court would

present no hazard of disrupting federal-state relations. The respondents did not ask the District Court to apply paramount federal law to prohibit state officials from carrying out state domestic policies, nor do they seek the obvious irritant to state-federal relations of an injunction against state officials. The only question for decision is the purely factual question whether the County expropriated the respondents' land for private rather than for public use. The District Court would simply be acting as would a court of the State in applying to the facts of this case the settled state policy that a County may not take a private citizen's land under the State's power of eminent domain except for public use.

It is true that a decision by the District Court returning the land to respondents on the ground that the taking was invalid would interfere with the proceeding to assess damages now pending in the state court in the sense that the damage proceeding would be mooted since the County would no longer have the land. But this interference, if properly called interference at all, cannot justify abstention since exactly the same suit to contest the validity of the taking could be brought in a state court different from the one in which the damage proceeding is now pending. It is perfectly clear under Pennsylvania law that the respondents could have challenged the validity of the taking, on the ground that it was not for public purposes, in a suit brought in a Court of Common Pleas independent of the damage proceedings pending on appeal from the Board of Viewers. The Court of Appeals' opinion instructs us as to the state procedure which would have applied if respondents had chosen the state forum: "These [Pennsylvania] authorities establish the propriety, if not the necessity, of testing the validity of a condemnation in a proceeding in the Pennsylvania courts independent of that in which compensation is awarded." 256 F. 2d, at 243. Again the Court of Appeals stated:

"the question involved before the federal court need not, and perhaps cannot, be raised in the pending state action . . . ." *Ibid.* We, of course, usually accept state law as found by the Court of Appeals, see *Propper* v. *Clark,* 337 U. S. 472; *The Tungus* v. *Skovgaard,* 358 U. S. 588, 596, and we have no hesitancy in doing so here where there is no indication that its conclusion as to the state law is not correct.[2] The issues of validity and damage are triable separately not because federal jurisdiction has been invoked, but because they are triable separately under the Pennsylvania law. Respondents, it bears repetition, could have brought this very suit in a state court different from the one in which the damage proceeding is pending and an adjudication of that validity suit by the state court would have the same effect on the pending damage proceeding as will the federal court adjudication. Instead of bringing such a suit in the state court, respondents exercised their right under 28 U. S. C. § 1332 to institute the equivalent suit in the District Court based on diversity of citizenship. Certainly considerations of comity are satisfied if the District Court acts toward the pending state damage proceeding in the same manner as would a state court.

It is suggested, however, that abstention is justified on grounds of avoiding the hazard of friction in federal-state relations any time a District Court is called on to adjudicate a case involving the State's power of eminent domain, even though, as in this case, the District Court would simply be applying state law in the same manner as would a state court. But the fact that a case concerns

---

[2] The Court of Appeals' conclusion as to the Pennsylvania law is amply supported by Pennsylvania authorities. *E. g., Spann* v. *Joint Boards of School Directors,* 381 Pa. 338, 113 A. 2d 281; *Pioneer Coal Co.* v. *Cherrytree & D. R. Co.,* 272 Pa. 43, 116 A. 45; *Philadelphia Clay Co.* v. *York Clay Co.,* 241 Pa. 305, 88 A. 487. See also 14 Standard Pa. Practice, c. 71, §§ 230, 231, 233, 235.

a State's power of eminent domain no more justifies abstention than the fact that it involves any other issue related to sovereignty. Surely eminent domain is no more mystically involved with "sovereign prerogative" than a State's power to regulate fishing in its waters, *Toomer.* v. *Witsell,* 334 U. S. 385, its power to regulate intrastate trucking rates, *Public Utilities Comm'n of California* v. *United States,* 355 U. S. 534, a city's power to issue certain bonds without a referendum, *Meredith* v. *Winter Haven,* 320 U. S. 228, its power to license motor vehicles, *Chicago* v. *Atchison, T. & S. F. R. Co.,* 357 U. S. 77, and a host of other governmental activities carried on by the States and their subdivisions which have been brought into question in the Federal District Courts despite suggestions that those courts should have stayed their hand pending prior state court determination of state law.

Furthermore, the federal courts have been adjudicating cases involving issues of state eminent domain law for many years, without any suggestion that there was entailed a hazard of friction in federal-state relations. A host of cases, many in this Court, have approved the decision by a federal court of precisely the same kind of state eminent domain question which the District Court was asked to decide in this case. This Court approved such a decision as early as 1878,[3] in *Boom Co.* v. *Patterson,* 98

---

[3] The basis for federal court adjudication of state eminent domain proceedings was established even before this. In *Suydam* v. *Broadnax,* 14 Pet. 67; *Union Bank* v. *Jolly's Adm'rs,* 18 How. 503; and *Hyde* v. *Stone,* 20 How. 170, this Court held that the federal courts would decide diversity cases even though they involved issues, such as the validity of a will, which were peculiarly within the State's competence to regulate. The principles were clearly settled in *Gaines* v. *Fuentes,* 92 U. S. 10. That case concerned a suit "to annul [a will] . . . as a muniment of title, and to limit the operation of the decree admitting it to probate." 92 U. S., at 20. The case, originally brought in a state court, was removed to a federal court on the basis of diversity

U. S. 403. There the petitioner, a private corporation authorized to utilize the State's power of eminent domain, moved in a state court to condemn respondent's land. Both parties appealed from an award by Commissioners, as provided by the relevant state statute, to a state court for a trial *de novo*. At this point, respondent removed the case to a federal court on the basis of diversity of citizenship. This Court, while recognizing that eminent domain is "an exercise by the State of its sovereign right . . . and with its exercise the United States . . . has no right to interfere . . . ," held that the removal was proper and that the federal court correctly adjudicated the issues involved. The Court concluded: "But notwithstanding the right is one that appertains to sovereignty, when the sovereign power attaches conditions to its exercise, the inquiry whether the conditions have been observed is a proper matter for judicial cognizance. If that inquiry take the form of a proceeding before the courts between parties, . . . there is a controversy which is subject to the ordinary incidents of a civil suit, and its determination derogates in no respect from the sovereignty of the State." 98 U. S., at 406. This rationale was subsequently applied by this Court to uphold adjudication of state eminent domain proceedings involving suits between diverse parties in the federal courts even though the procedures available would not be the same as those provided

of citizenship. This Court upheld the removal on the ground that, although the State had authority to establish the substantive law relevant to the validity of wills and the procedure by which wills were to be contested, if, under the scheme developed by the State, a controversy arose between citizens of different States, the federal courts would adjudicate that controversy. These principles were further articulated in *Chicot County* v. *Sherwood,* 148 U. S. 529. This Court has often upheld federal court determinations of state law concerning wills, *e. g., Ellis* v. *Davis,* 109 U. S. 485; *Hess* v. *Reynolds,* 113 U. S. 73, even when the State itself claimed the decedent's property by escheat, *McClellan* v. *Carland,* 217 U. S. 268.

by the state practice, *Searl* v. *School District No. 2,* 124 U. S. 197, and even though the case involved the power of the condemning authority to take the property, *Pacific Railroad Removal Cases,* 115 U. S. 1, 17–23.

It is now settled practice for Federal District Courts to decide state condemnation proceedings in proper cases despite challenges to the power of the condemning authority to take the property. This Court has approved of the practice many times. *East Tennessee, Va. & Ga. R. Co.* v. *Southern Telegraph Co.,* 112 U. S. 306; *Clinton* v. *Missouri P. R. Co.,* 122 U. S. 469; *Upshur County* v. *Rich,* 135 U. S. 467, 475–477 (dictum); *Martin's Adm'r* v. *Baltimore & Ohio R. Co.,* 151 U. S. 673, 683 (dictum); *Madisonville Traction Co.* v. *St. Bernard Mining Co.,* 196 U. S. 239; *Mason City and Fort Dodge R. Co.* v. *Boynton,* 204 U. S. 570; *Commissioners of Lafayette County* v. *St. Louis Southwestern R. Co.,* 257 U. S. 547 (dictum); *Cincinnati* v. *Vester,* 281 U. S. 439. Cf. *Risty* v. *Chicago, R. I. & P. R. Co.,* 270 U. S. 378. Trial of state eminent domain cases has become a common practice in the federal courts.[4] Indeed, Rule 71A of the Federal Rules of Civil Procedure,

---

[4] *E. g., Wabash R. Co.* v. *Duncan,* 170 F. 2d 38; *Franzen* v. *Chicago, M. & St. P. R. Co.,* 278 F. 370; *In re Bensel,* 206 F. 369; *Broadmoor Land Co.* v. *Curr,* 142 F. 421; *South Dakota Cent. R. Co.* v. *Chicago, M. & St. P. R. Co.,* 141 F. 578; *Chicago, R. I. & P. R. Co.* v. *10 Parcels of Real Estate Located in Madison County, Iowa,* 159 F. Supp. 140; *Williams Live Stock Co.* v. *Delaware, L. & W. R. Co.,* 285 F. 795; *Deepwater R. Co.* v. *Western Pocahontas Coal & Lumber Co.,* 152 F. 824; *Union Terminal R. Co.* v. *Chicago, B. & Q. R. Co.,* 119 F. 209; *Kirby* v. *Chicago & N. W. R. Co.,* 106 F. 551; *Sugar Creek, P. B. & P. C. R. Co.* v. *McKell,* 75 F. 34; *Kansas City & T. R. Co.* v. *Interstate Lumber Co.,* 37 F. 3; *Mineral Range R. Co.* v. *Detroit & Lake Superior Copper Co.,* 25 F. 515; *City of Chicago* v. *Hutchinson,* 15 F. 129. Cf. *Kaw Valley Drainage District* v. *Metropolitan Water Co.,* 186 F. 315; *Fishblatt* v. *Atlantic City,* 174 F. 196; *Adams* v. *City of Woburn,* 174 F. 192; *Kansas City* v. *Hennegan,* 152 F. 249. See also 7 Moore's Federal Practice (2d ed.) § 71A.11; 6 Nichols on Eminent Domain (3d ed.) § 27.8 [2].

adopted by the Court in 1951, provides a detailed procedure for use in eminent domain cases in the Federal District Courts and specifically provides, in subsection (k), "The practice as herein prescribed governs in actions involving the exercise of the power of eminent domain under the law of a state, provided that if the state law makes provision for trial of any issue by jury, or for trial of the issue of compensation by jury or commission or both, that provision shall be followed." This Rule makes perfectly clear, as do the Notes of the Advisory Committee on Rules pertaining to it,[5] that this Court, when it adopted the Rule, intended that state eminent domain cases, including those which raised questions of authority to take land, would be tried in the Federal District Courts if jurisdiction was properly invoked. This was confirmed by this Court's opinion in *Chicago, R. I. & P. R. Co.* v. *Stude,* 346 U. S. 574. Although holding that the respondent could not remove a state condemnation case to the Federal District Court on diversity grounds because he was the plaintiff in the state proceeding, the Court clearly recognized that the defendant in such a proceeding could remove in accordance with § 1441 and obtain a federal adjudication of the issues involved.

There is no suggestion that the state eminent domain proceedings tried in the federal courts, both before and after promulgation of the Rule 71A procedures, have resulted in misapplication of state law, inconvenience, or friction with the States. Rule 71A was adopted only after a thorough investigation of eminent domain practice in the federal courts,[6] and its provision for trying state

[5] Note to Subdivision (k), Notes to Rule 71A of Advisory Committee on Rules, printed at 28 U. S. C. A. Rule 71A (1958 Pocket Part).

[6] See Notes to Rule 71A of Advisory Committee on Rules, note 8, *supra;* see also 7 Moore's Federal Practice (2d ed.) § 71A.120; 64 Yale L. J. 600.

eminent domain cases in the District Courts necessarily reflects a conclusion that this practice is unobjectionable.

Aside from the complete absence of any possibility that a District Court adjudication in this case would necessitate decision of a federal constitutional issue or conflict with state policy, the state law that the District Court was asked to apply is clear and certain. All that was necessary for the District Court to dispose of this case was to determine whether, as a matter of fact, the respondents' property was taken for the private use of Martin W. Wise, Inc. The propriety of a federal adjudication in this case follows *a fortiori* from the established principle that Federal District Courts should apply settled state law without abstaining from the exercise of jurisdiction even though this course would require decision of difficult federal constitutional questions. *Chicago* v. *Atchison, T. & S. F. R. Co.,* 357 U. S. 77; *Public Utilities Comm'n of California* v. *United States,* 355 U. S. 534; *Toomer* v. *Witsell,* 334 U. S. 385.

The undesirability of a refusal to exercise jurisdiction in the absence of exceptional circumstances which clearly justify an abstention is demonstrated by the facts of this case. Respondents have consumed considerable time and expense in pursuing their claim that their property has been unlawfully taken. To order them out of the federal court would accomplish nothing except to require still another lawsuit, with added delay and expense for all parties. This would be a particular hardship for the respondents, who, besides incurring the added expense, would also suffer a further prolonged unlawful denial of the possession of their property if ultimately they prevail against the County and its lessee. It exacts a severe penalty from citizens for their attempt to exercise rights of access to the federal courts granted them by Congress to deny them "that promptness of decision

which in all judicial actions is one of the elements of justice." *Forsyth* v. *Hammond*, 166 U. S. 506, 513.

Two other contentions raised by the County can be disposed of quickly. The County argues that the Board of Viewers has established jurisdiction over the land in question and thus the rule applies that when one court has assumed jurisdiction over a *res*, no other court will undertake to enter a judgment which might be incompatible with the disposition ultimately to be made by the first court. The short answer to this contention is that the Board of Viewers under Pennsylvania law does not have *in rem* jurisdiction over property. This is apparent from the fact that an independent proceeding lies to question the validity of the taking of property which is the subject of a Board of Viewers' proceeding. The "damage" proceeding is simply an *in personam* suit to determine what the State must pay for property it appropriates; it does not require or contemplate control of the *res* by the Board of Viewers.

The County also urges that a decision by the District Court holding the taking to be invalid would be barred by 28 U. S. C. § 2283. That section provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

The County's theory is that a holding that the taking was invalid and an order reconveying the land to respondents would be *res judicata* on the parties in the Board of Viewers' proceedings. Since the County would no longer have the land, that proceeding to determine the compensation due for the taking of the land would be mooted. But it has been firmly established under the language of

§ 2283, which has, in substance, been in force since first enacted in § 5 of the Act of March 2, 1793,[7] that a federal suit is not barred merely because a holding in the case might be *res judicata* on the same parties litigating the same issue in a state court and thereby moot the state proceeding. *Kline* v. *Burke Construction Co.*, 260 U. S. 226, settled the governing principle. In that case diversity jurisdiction had been invoked to adjudicate an alleged breach of contract. The defendant in the federal court proceeding had initiated a suit in a state court to adjudicate the same issue. The Court of Appeals ruled that the Federal District Court should have issued a requested injunction to stay the state court proceedings. This Court held that a statute similar to present § 2283 barred the injunction, but that the District Court could adjudicate the breach of contract issue even though its holding would be decisive of the state case. The Court stated that "the rule . . . has become generally established that where the action first brought is *in personam* and seeks only a personal judgment, another action for the same cause in another jurisdiction is not precluded." 260 U. S., at 230. Congress in enacting § 2283 expressed no intention to modify this firmly established principle. Thus there is no reason to expand the plain wording of § 2283 which bars only *injunctions* designed to stay state court proceedings. The respondents' suit in the District Court was for a judgment of ouster. They abandoned the claim for an injunction against the state court and against the County. It follows that § 2283 would not bar the relief requested in the District Court.

*Affirmed.*

---

[7] The language of 28 U. S. C. § 2283 has been retained substantially unchanged from its original form in § 5 of the Act of March 2, 1793, 1 Stat. 334–335. For a discussion of its origin and history, see *Toucey* v. *New York Life Ins. Co.*, 314 U. S. 118.

Mr. Justice Clark, with whom Mr. Justice Black, Mr. Justice Frankfurter, and Mr. Justice Harlan join, dissenting.

The Court says that under the peculiar facts of this case the trial judge has abused his discretion in abstaining from trying the issue involved here, which is presently pending in a previously filed state case between the same parties. I see nothing in the facts that reveals any clear abuse of discretion. In fact, the disruption of the State's processes by the refusal of the Court in the circumstances of this case to permit the application of modern businesslike procedures in the administration of the federal diversity jurisdiction requires my dissent.

Allegheny County, a subdivision of the State of Pennsylvania, took action under its state law to acquire property owned by respondents which was allegedly necessary for the enlargement of its Greater Pittsburgh Airport. The respondents made no effort to remove that action to the federal court. If that had been done, the entire case would have been subject to trial in the federal court. Instead, however, the respondents appeared in the state case and contested the issue of damages for the taking, but raised no objection whatever to its validity. Both parties appealed from an award of $52,644 in damages and demanded a trial *de novo* in the State's Court of Common Pleas. The County thereupon entered upon the property and began its improvement. A year later respondents filed this suit in the federal court attacking the validity of the County's taking in the state suit.[1]

---

[1] The grounds are obviously frivolous. Respondents urge that the County's leasing to its contractor of a strip 75′ x 150′ out of the 8 acres condemned amounts to an abandonment of its taking for "public use." The record shows that the lease was made in order to permit the contractor to use this small strip for storage and con-

The Court requires the County to litigate that sole issue in the federal court while the state court holds in abeyance the original case involving the taking as well as the damages therefor.

Thus the state suit is split; the validity of the taking being involved in the federal court as well as the state proceeding, while the amount of damages remains for the state court alone. Admittedly the federal court cannot obtain jurisdiction over the latter. As a result, the County now has two lawsuits on its hands, one, involving half of its state case, will be tried in the federal court, while the remainder pends in the state court. If it finally prevails in the federal court, after two or three more years of delay incident to trial and appeal, still it must go back to its state case and try the issue of damages. If the County loses in the federal court, it must nevertheless go back to the state court and start all over again with a new action or an amendment of the old one. This is true because the plans, as shown in the record, indicate clearly that the County will be obliged to take respondents' property because it is situated adjacent to the old entrance to the airport and would be necessary for the proposed enlargement. The latter course would inevitably lead to greater damages, as well as additional years of delay, all of which would be occasioned by the action today.

The Court describes this needless merry-go-round of technical procedures as preventing "added expense [and] . . . further prolonged unlawful denial of the possession of their [respondents'] property. . . ." Obviously just the opposite is true. The respondents, by not removing the case to the federal court, but rather by waiting a year before filing the present suit, have now delayed the

---

centration of supplies of the contractor in the performance of his duties under the contract with the County for the improvement and enlargement of the Greater Pittsburgh Airport.

County for over three years,[2] and bid fair to extend that period for at least two more under the ruling of this Court. On the other hand, if the Court required respondents to proceed in the state suit, all of the issues between the parties would be settled in the one suit, even if respondents persisted—as the Court holds is their right—in filing a separate suit in the state court over the validity of the taking. That suit could easily be consolidated with the original case, and the validity of the taking as well as the damages therefor could be settled at one trial. This, of course, cannot be done when one of the cases is in the federal court and the other in the state. This points up the fallacy of the Court's conclusion that "considerations of comity are satisfied if the [Federal] District Court acts toward the pending state damage proceeding in the same manner as would a state court." It is, indeed, a poor way to administer justice, especially where a subdivision of the State is involved.

In short, I say that under the peculiar facts of this case the "exceptional circumstances" of which the majority speaks are present. An "order to the parties to repair to the state court would clearly serve an important countervailing interest," namely, the orderly and businesslike administration of justice, as well as the comity due Pennsylvania's courts.

As to the latter consideration, the Court bottoms its decision to make the County split its case between the two jurisdictions on the proposition that respondents "abandoned the claim for an injunction against the state

---

[2] The record does not reveal whether the County has proceeded with its improvements or not. If it has not, the respondents' action in filing this suit, and which the Court approves, has delayed a much-needed improvement for over three years. If it has proceeded to complete the improvement, the County has still been delayed in obtaining final title to the property for all these years, all because of this frivolous action of the respondents.

court and against the County." But the reality of the situation is that the state court, which has already abstained for three years at the urging of respondents may now decide that it should proceed to hear and determine both the issues of validity and damages which are and have been pending in the state case. If it did so, there would result an unseemly race between the forums and a head-on collision between the state and federal courts. The latter would be moving by way of ejectment and the former by way of condemnation over the same property and involving the same parties. Still, since, as the majority says, "the plain wording of § 2283 . . . bars . . . injunctions," this unseemly spectacle could not be stopped and would result in "needless friction with state policies." *Railroad Comm'n* v. *Pullman Co.,* 312 U. S. 496, 500 (1941). In view of these circumstances, peculiar to this case, there is nothing here to show that the trial court clearly abused its discretion and I would therefore reverse the Court of Appeals and reinstate the judgment of the trial judge.