See also D.C., 181 F.Supp. 880.

**In re Appointment of Viewers to Assess Damages on Account of the APPRO-PRIATION BY THE CITY OF BETH-LEHEM OF PROPERTY OF Irving FOX, Trustee, Situated in the TOWN-SHIP OF HANOVER, COUNTY OF NORTHAMPTON, Commonwealth of PENNSYLVANIA.**

**Civ. A. No. 25670.**

United States District Court
E. D. Pennsylvania.

Feb. 9, 1960.

Louis J. Goffman, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for Irving Fox, trustee.

Richard P. Brown, Jr., W. James Mac-Intosh, Arthur Littleton, Morgan, Lewis & Bockius, Philadelphia, Pa., Daniel L. McCarthy, City Sol., Bethlehem, Pa., for City of Bethlehem.

GRIM, District Judge.

On November 25, 1958, the City of Bethlehem, Pennsylvania ("City") completed the passage of an ordinance appropriating by eminent domain a tract of 62½ acres of nearby land for park purposes. On December 5, 1958,[1] the record owner of the land, Irving Fox, trustee. a citizen of New York, instituted the present action asking this court to appoint a board of viewers to determine the amount of his damage and award him that amount against the City. Jurisdiction of this court was and is predicated upon diversity of citizenship. The action was filed under Rule 71A of the Federal Rules of Civil Procedure, 28 U.S.C., but the petition for the appointment of viewers followed the procedure established by the applicable Pennsylvania statute.[2] In response to the petition this court appointed a board of three viewers to assess the damage.

1. The passage of the ordinance gave the landowner the right immediately to have the amount of damage ascertained and awarded to him. Pennsylvania Third Class City Code, Sec. 2820, 53 P.S. § 37820.

2. Sections 2819 and 2842 of the Pennsylvania Third Class City Code, 53 P.S. §§ 37819 and 37842, which provide that to have a determination of the amount of damages for the taking, either the owner or the city may petition the state court to appoint three viewers. After the viewers have made their award either party has the right to appeal to the court to have the issue of the amount of damages determined by a jury.

Rule 71A(k) of the Federal Rules provides: "The practice as herein prescribed governs in actions involving the exercise of the power of eminent domain under the law of a state, provided that if the state law makes provision for trial of any issue by jury, or for trial of the issue of compensation by jury or commission or both, that provision shall be followed."

On January 30, 1959, before the viewers had held any hearing or made an award, the City attempted to put an end to this action by voluntary dismissal, filing a paper captioned "Notice of Dismissal." The following day Fox filed a motion to set aside the City's "Notice of Dismissal" and to reinstate this action. Fox' motion is now before me.

There is thus presented the odd situation in which the party against whom an action has been brought has sought to stop the action against it by taking steps to dismiss the action ex parte.

■ The City was of the opinion that it had a right to take a voluntary dismissal of the action by virtue of Federal Rule 71A(i) (1):

"(i) Dismissal of Action.

"(1) *As of Right.* If no hearing has begun to determine the compensation to be paid for a piece of property and the plaintiff has not acquired the title or a lesser interest in or taken possession, the plaintiff may dismiss the action as to that property, without an order of the court, by filing a notice of dismissal setting forth a brief description of the property as to which the action is dismissed."

In its opinion that it had a right to take a voluntary dismissal the City was obviously mistaken. Although the City passed the ordinance condemning and appropriating the land, the City was not the party which brought the court action. The action was brought by Fox, the property owner. For the purposes of Rule 71A(i) the plaintiff is Fox and the defendant is the City.[3] Rule 71A(i) gives only the plaintiff the right to take a voluntary dismissal.

■ Even if it be assumed for the sake of argument that the City is the plaintiff, Rule 71A(i) (1) would not apply, because a voluntary dismissal may be taken only when " * * * the plaintiff has not acquired the title or a lesser interest in or taken possession * * *." of the property. The City by passage of the condemnation ordinance acquired the right to immediate possession of the property.[4] While the right to immediate possession does not amount to title, it certainly constitutes a "lesser interest" within the meaning of the Rule, sufficient to prevent the City's taking a voluntary dismissal of the action, even if it were labeled "plaintiff."

Fox' motion to set aside the City's "Notice of Dismissal" will be granted and the action will be reinstated.

Motion to Dismiss.

Fox' petition asking for the appointment of viewers by this court was filed December 5, 1958. On December 9, 1958, the City filed a written motion to dismiss which this court denied without opinion the same day. The opinion will now be filed with the opinion granting the motion to set aside the City's "Notice of Dismissal."

In Allegheny County v. Frank Mashuda Co., 1959, 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163, the Supreme Court considered the right of a property owner to have his case tried in a federal court when his land is taken by a state or a political subdivision thereof in exercise of a state right of eminent domain. While the problem in the Mashuda case is different from the problem in the present case, the opinion of the Supreme Court is so encompassing that a quotation from it serves to illuminate the problem and dispose of the City's contention

3. It is clear in the earlier portions of Rule 71A that the word "plaintiff" applies to the condemnor and the word "defendant" to the landowner, but this is not true in Subdivision (i). In Subdivision (i) only the party who institutes a court action can be a plaintiff.

4. "Any city shall have the right to immediate possession, use or control of the land or property condemned by it unless, upon petition, the court has ordered bond with surety to be given, whereupon the city's right to immediate possession shall be postponed until compliance with the order of the court." Pennsylvania Third Class City Code, Sec. 2807, 53 P.S. § 37807. There was no such petition or order.

that an action such as this cannot be brought in a federal court, upon which the City's motion to dismiss the present action was largely bottomed. The Supreme Court said, 360 U.S. 185, at pages 194, 195, 79 S.Ct. 1060, at page 1066:

"Trial of state eminent domain cases has become a common practice in the federal courts. Indeed, Rule 71A of the Federal Rules of Civil Procedure, 28 U.S.C.A., adopted by the Court in 1951, provides a detailed procedure for use in eminent domain cases in the Federal District Courts and specifically provides, in subsection (k), 'The practice as herein prescribed governs in actions involving the exercise of the power of eminent domain under the law of a state, provided that if the state law makes provision for trial of any issue by jury * * * or commission or both, that provision shall be followed.' This Rule makes perfectly clear, as do the Notes of the Advisory Committee on Rules pertaining to it, that this Court, when it adopted the Rule, intended that state eminent domain cases, including those which raised questions of authority to take land, would be tried in the Federal District Courts if [diversity] jurisdiction was properly invoked. This was confirmed by this Court's opinion in Chicago, R. I. & P. R. Co. v. Stude, 346 U.S. 574, 74 S.Ct. 290, 98 L.Ed. 317."

■ It is clear from this quotation that Fox had a right to have the issue of compensation tried in this court, first by viewers (a commission) and later by a jury, if desired, conformably to Pennsylvania procedure, if proper diversity jurisdiction exists.

■ The City contends that proper diversity jurisdiction does not exist, asserting that the transfer of the land to Fox as trustee was made merely for the purpose of creating diversity jurisdiction. There is substantial evidence in the case indicating that a strong motive for the conveyance was that of creating

such jurisdiction in this court. This motive would not divest this court of jurisdiction, however, since this court has jurisdiction even though one motive for the conveyance may have been to create diversity jurisdiction: Corabi v. Auto Racing, Inc., 3 Cir., 1959, 264 F.2d 784.

■ The City further contends that the conveyance of the land to Fox was "illusory" and invalid, that title to the land therefore remains in the previous trustees, and that since the previous trustees are residents of Pennsylvania, there is no diversity between them and the City. The evidence does not support the City's contention that the conveyance was illusory. The new trustee was appointed and the real estate was conveyed to him apparently for several reasons, one of which was to create diversity jurisdiction in this court. This in itself was a substantial reason for the conveyance. It was not illusory.

The City contends that title to the land remains in the previous trustees for another reason: that the procedure followed in substituting Fox as trustee did not comply with the applicable provisions of the trust instruments.

■ The trusts were created in the following manner: On January 1, 1955, Harold S. Campbell created four separate trusts, one for each of his children, who are minors. He named as trustees himself and his wife, Martha M. Campbell. He conveyed to each trust estate title to an undivided one-fourth interest in a small tract of land. In 1957 each trust acquired by purchase an undivided one-fourth interest in the tract of 62½ acres, the subject of this action. Harold S. Campbell lent to each trust the money needed for the purchase. On September 18, 1958, the two trustees signed a resignation coupled with a designation of Irving Fox as successor trustee. The trustees also executed and delivered a deed conveying the 62½-acre tract to Fox as trustee of each of the four trusts. Fox executed an instrument accepting the trust and he accepted and recorded the deed.

Each trust instrument provided with reference to the appointment of successor trustees as follows:

Article V.

"A. If at any time during the administration of this trust there shall be a vacancy or vacancies, the following persons shall, if willing to do so, fill said vacancy or vacancies in the following order:

"1. The survivor of Harold S. Campbell and Martha M. Campbell * * *

"The parties hereto reserve the right to amend this trust in order to change the designation of trustees herein, but not to include the power to revest any property in themselves, nor to change the designation of any beneficiaries of any trust herein created, nor to do anything by way of amendment except to facilitate the administration of the trust nor to enlarge the powers of the trustees * * *

"B. Each person or corporation becoming a successor trustee hereunder shall accept such office in writing and shall thereafter be a trustee immediately without the necessity of any other act, conveyance or transfer, and no bond shall ever be required to be furnished by any trustee hereunder.

"C. Any trustee at any time serving hereunder may resign as such upon making a proper accounting of the services and activities as such trustee and by delivering to the remaining trustee or to the appropriate court a written resignation."

The Campbells as trustees did not file an account in any court and apparently they did not make an accounting to any one. The City contends that because of the failure to file or deliver an accounting the resignation is ineffective and that the Campbells, who are citizens of Pennsylvania, are still the trustees and the owners of the real estate. Article V, C, of the trust agreement gives some strength to the City's contention. However, the contention must be rejected since under the terms of Article V, A, quoted above, the Campbells had the right to amend the trust "in order to change the designation of trustees," and this is exactly what the Campbells did. Their written resignation as trustees and designation of Fox is as follows:

"Pursuant to Article V, Paragraphs A and C, the undersigned hereby resign as trustees of the above-stated Trust and amend said Trust by changing the designation of trustees therein from Harold S. Campbell and Martha M. Campbell to Irving Fox, 61 Broadway, New York, New York."

While under the law of Pennsylvania the Campbells may be accountable to the beneficiaries and the new trustee for their administration of the trusts, this does not prevent the passage of title to the land to Fox and it does not prevent him from being trustee, or from having been trustee since his designation.

I conclude that Irving Fox, trustee, is the legal owner of the 62½-acre tract involved in this action. Since Fox is a citizen of New York, this court has jurisdiction of this action because of the diversity of citizenship between Fox and the City.

The City's motion to dismiss was properly denied.

Fox's motion to set aside the City's "Notice of Dismissal" will be granted and the action will be reinstated.