**CONTINENTAL CASUALTY COMPANY, Plaintiff,**

v.

**AETNA CASUALTY AND SURETY COMPANY, Avis Rent-A-Car System, Inc., Roger W. Barr and John Hoffman.**

**Civ. A. No. 60-464.**

United States District Court
W. D. Pennsylvania.
Nov. 16, 1961.

Weis & Weis, Pittsburgh, Pa., for plaintiff Continental Casualty Co.

Reed & Egler, Pittsburgh, Pa., for defendant Aetna Casualty and Surety Co.

Robert M. Carson, Greensburg, Pa., for defendant Roger W. Barr.

DUMBAULD, District Judge.

The following facts are established by stipulation of the parties:

Plaintiff (hereinafter called Continental) settled, by payment of $6000 to one Roger W. Barr, a lawsuit in this Court arising out of a collision between a car driven by Barr and a car driven by one John Hoffman. Hoffman had rented the car he was driving from Avis Rent-A-Car, for whom Continental was the insurance carrier. The policy also contained an "other insurance" clause.[1]

Hoffman's wife happened to own a car, as to which defendant (herein called Aetna) was the insurance carrier. Under this policy a spouse such as Hoffman was covered. The Aetna policy also contained an "other insurance" clause.[2]

Continental now applies to this Court for a declaratory judgment holding Aetna liable to pay half of the $6000 settlement, as well as half of the expenses of $556.42 incurred in negotiating the settlement. Continental's contention is that the two "other insurance" clauses cancel each other out (like the terms of the legendary statute requiring both trains at a grade crossing to stop until the other has passed), leaving both insurers equally liable for the loss.[3]

Aetna, on the other hand, contends that under Pennsylvania law (as shown in Grasberger v. Liebert & Obert, 335 Pa. 491, 495, 6 A.2d 925, 122 A.L.R. 1201 (1939), and followed by Judge Willson in Nationwide Mutual Ins. Co. v. Fidelity & Casualty Co. of New York, 188 F.Supp. 377, 380–381 (W.D.Pa.1960),[4] Continental is primarily liable and should not be reimbursed.

Continental replies that these authorities are inapplicable because they involved a conflict between an "excess" and an "escape" clause, rather than between two "excess" clauses.[5]

We would not find this distinction convincing if we had to resolve this interesting question. Whether an "other insurance" clause is characterized as an "escape clause", or as an "excess clause" or as a "pro rata clause" does not seem to be material. In each case the object of the wording used is to enable the insurer to escape liability on a policy-covered loss by claiming that some other insurer is more liable.

In the instant situation it seems that logic and justice would indicate that the

---

1. "Other Insurance. The insurance under this policy shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under another policy or otherwise."

2. "Other Insurance
   If the insured has other insurance against a loss covered by Part I of this policy the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."

3. Plff.'s Brief of Sept. 23, 1961, pp. 4–5.

4. Reversed on another ground in 286 F.2d 91, 92 (C.A.3, 1961) for the reason that there was no justiciable controversy with respect to which a declaratory judgment was appropriate.

5. Plff.'s Brief of Sept. 23, 1961, p. 2.

primary coverage of the rented car is that provided by plaintiff. Its policy is directly applicable to the type of business done by Avis, and its rates can be based on the experience warranted by such exposure and passed on to the customers of Avis.

On the other hand the Aetna coverage is purely personal and peripheral, and is incidental to Hoffman's status as spouse.

We would therefore follow the decision of Judge Willson and the Pennsylvania case on which it is based, if we were required to meet the issue involved here. Such a conclusion would best "place this branch of the law upon a basis more consistent with the realities of business experience and the moralities of life." [6]

But we conclude, following the illustrious example of Chief Justice Marshall in Marbury v. Madison, 1 Cranch 137, 2 L. Ed. 60 (1803), and "backing into our decision" while leaving the road strewn with *obiter dicta,* that this case must be dismissed for lack of jurisdiction.

■ Diversity jurisdiction under 28 U.S.C.A. § 1332 as amended by the Act of July 26, 1956, 70 Stat. 658, requires that the matter in controversy exceed the sum of $10,000, exclusive of interest and costs. This applies to declaratory judgments, which this Court is authorized by 28 U.S.C.A. § 2201 to render only in cases of actual controversy "within its jurisdiction".

■ In this case all that plaintiff seeks is a declaration that it is entitled to $3000 (half of $6000) plus a few dollars for the expense of handling negotiations for settlement. This does not meet the $10,-000 requirement.

■ If it be argued that the policy limits, rather than the actual amount of the settlement, furnish the criterion, Kaufman v. Liberty Mutual Ins. Co., 245 F.2d 918, 920 (C.A. 3, 1957), holds that such potential or inchoate liability does not suffice. Before the amount involved was concretized as a $6000 settlement,

and hence as an amount outside our jurisdiction, the controversy could not be the subject of declaratory judgment procedure at all. Nationwide Mutual Ins. Co. v. Fidelity & Casualty Co. of New York, 286 F.2d 91, 92 (C.A. 3, 1961), supra; Poe v. Ullman, 367 U.S. 497, 502–507, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961).

Moreover, even if we had jurisdiction, the doctrine of "abstention" might well apply. Allegheny County v. Frank Mashuda Co., 360 U.S. 185, 187, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). Continental contends that there are no Pennsylvania cases in point.[7] It would therefore seem preferable for plaintiff to seek an authoritative solution in the State courts rather than for this Court to engage in speculative conjecture on the point.

---

6. Cardozo, The Nature of the Judicial Process, 155 (1921).

7. Pltff.'s Brief of Sept. 23, 1961, p. 4.