Ceinwen **KING–SMITH**, Plaintiff,

v.

**Mrs. M. L. AARON et al., Defendants.**

**Civ. A. No. 70–581.**

United States District Court,
W. D. Pennsylvania.

Oct. 7, 1970.

S. David Litman, Pittsburgh, Pa., for plaintiff.

Justin M. Johnson, Pittsburgh, Pa., for defendants.

## OPINION

GERALD J. WEBER, District Judge.

Plaintiff is blind. The law of compensation, however, has endowed her with a remarkable facility for learning diverse and unrelated foreign languages. Her academic credentials are certified by degrees from two prestigious universities. Even more to her merit, she does not flaunt the ubiquitous doctorate whose glut on today's market makes it more of a substitute for rather than a recognition of genuine intellectual competence.

She is fully qualified and certified to teach in the public schools of Pennsylvania. A state certificate is required to teach in any public school in Pennsylvania. [24 P.S. 12–1201]. Plaintiff, to have acquired such state certificate, must have secured a physician's certificate of no major physical disability, unless such person submits a certificate from her university certifying that the applicant can perform the duties notwithstanding the impediment. [24 P.S. 12–1209].

Plaintiff applied to be placed on the eligibility list to teach in the Pittsburgh public schools. She took the physical examination required by the provisions of the state statute for appointment in the school districts of the first class (i. e. Pittsburgh) [24 P.S. 21–2108], under which it is provided that applicant must present a physician's certificate setting forth that applicant is not physically disqualified by reason of any acute physical defect from successfully performing the duties of a teacher.

The examining physician noted such physical defect but recommended that it be waived in view of plaintiff's extraordinary qualifications.

Plaintiff was not placed on the eligible list. She brings this action against a large number of defendants allegedly the membership of the Board of Education of the City of Pittsburgh, in their individual capacity, and three employees of the Board, the Superintendent and two Assistant Superintendents.

Plaintiff claims jurisdiction in this court under the Civil Rights Act, 42 U.S.C. 1983 and 1985. Plaintiff alleges that the refusal of defendants to place her on the eligibility list solely on the basis of a physical handicap constitutes a denial of substantial due process of law and of the equal protection of the law. Plaintiff adds vaguely pleaded conspiracy counts under 42 U.S.C. 1985.[1]

Defendants have moved to dismiss for failure of the complaint to state a cause of action under the Civil Rights Act and for failure to plead a cause of action in conspiracy.

While there are probable defects in pleading such as misnomer, possible misjoinder of parties, and a failure to plead the conspiracy count with specificity, these might be cured by amendment. The other matters raised by defendants' motion are more critical, going to the sufficiency of the Civil Rights Act allegations which alone give us jurisdiction.

However, it becomes immediately apparent from plaintiff's pleading and brief that we do not need to meet these questions at this point. A conflict of

---

1. An uninvited and largely useless "amicus curiae" brief ascribes this action to "disaffection for blind persons". We think this a clearly unwarranted aspersion on the defendants. The requirement of sight may be a very valid qualification in today's public high schools, where the teacher may be more likely to be called on to fulfill the functions of a babysitter, a policeman, and a referee of a free-for-all, than the traditional role of a teacher, and where the first principle of pedagogy is now reported to be, "Always keep your back to the blackboard."

On the other hand, lest the court be accused of such disaffection, let us note our admiration for the genius of Homer and Milton, and our recollection of John F. Maher, the blind tutor, who taught Latin, Greek and mathematics to George Wharton Pepper and who later became an outstanding student of Pepper's at the University of Pennsylvania Law School. (Pepper, G. W., "Philadelphia Lawyer", Lippincott. 1944, p. 28).

state law is made immediately apparent in that plaintiff alleges that "defendants violated the letter and spirit of 24 P.S. 12–1209." This contention is made because plaintiff claims that the general provisions of the Pennsylvania School Code, Article XII, control and that the provisions of. Article XXI concerning the powers of the local school board are governed by the general provisions of the code. If this is so, a determination of this by the state courts or the administrative processes would dispose of the alleged civil rights claim.

This is a clear case for application of the doctrine of abstention. If the state courts should hold the action of defendants as unauthorized under state law it will not be necessary for the federal court to pass upon the Civil Rights or constitutional claim.

The abstention doctrine has been based, in part, on federal-state comity;

"This now well-established procedure is aimed at the avoidance of unnecessary interference by the federal courts with proper and validly administered state concerns, a course so essential to the balanced working of our federal system. To minimize the possibility of such interference a 'scrupulous regard for the rightful independence of state governments * * * should at all times actuate the federal courts,' Matthews v. Rodgers, 284 U.S. 521, 525, 52 S.Ct. 217, 76 L.Ed. 447, as their 'contribution * * * in furthering the harmonious relation between state and federal authority * * *' Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971. In the service of this doctrine which this Court has applied in many different contexts, no principle has found more consistent or clear expression than that the federal courts should not adjudicate the constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable opportunity to pass upon them." (citations omitted). Harrison v. N. A. A. C. P. 360 U.S.

167, 176, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152 [1959].

We think there is something more than comity involved today. We note that the United States District Courts are flooded with claims allegedly arising under the Civil Rights Act. Every act, every administrative decision of every state and local official is today threatened by federal litigation. This extends to every organization or institution that receives some financial support from state or local government sources. If state and local governments are to remain viable instruments of government and not become administrative agencies of the federal court system, there must remain some avenue by which local concerns are solved locally through the democratic process. Using the federal Civil Rights Act as a vehicle to threaten every exercise of discretion in matters legitimately within the area of a state's competence is not the purpose of this grant of jurisdiction to the federal courts. Plaintiff's complaint does not reveal a deliberate, calculated state assault upon a contitutionally guaranteed freedom. It merely contests the application of a certain standard of fitness for teaching as to whether that standard is authorized by state law, and whether that standard is reasonable. The state has a right to make a legitimate inquiry into the competency of its teachers. Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 [1966].

Plaintiff may submit her federal claims to the state court along with the contention that defendants' acts were contrary to state law. State court judges are sworn to uphold the Constitution of the United States, as well as federal district judges. In such case the avenue of appeal leads to the United States Supreme Court. Or plaintiff may reserve the federal question in state court action and seek only the interpretation of the conflicting state statute. Cf. England v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 [1964].

An illustration of what we deem a proper procedure in this case is illustrated by the only reported case presenting the same factual situation. New York State had a duel system of teacher certification, one for the state at large except for New York City, and one for New York City. The state-wide statute prohibited disqualification for blindness, the city regulations prescribed a visual test. An action was filed in the New York Courts contesting the City's visual requirement on the grounds that it violated the state statute, but, the Court held the City's requirement valid in view of the powers granted the City by the state statute. Chavich v. Bd. of Examiners, 16 N.Y.2d 810, 263 N.Y.S.2d 7, 210 N.E.2d 359 [1965]. No question of federal constitutional rights was raised. Thereafter the state statute was amended to make the state-wide standard applicable to the City. Thus the local problem was solved by the local legislative process after the judicial construction had been determined.

We find no barrier to applying the abstention doctrine. This is not a case where the state law is settled and clear. County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed. 2d 1163 [1959], nor is it a case where state action threatens a "protected" activity; i. e., the exercise of rights of free expression under the First Amendment. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 [1965].

Having determined that abstention is proper here our question now is the proper determination of this case. As stated in Urbano v. Board of Mgrs. of N. J. State Prison, 415 F.2d 247, 254 [3rd Cir., 1969]:

"Professor Wright has also noted, quite significantly, that 'where the federal court defers to avoid interference with state activities, *dismissal of the action,* rather than retention of jurisdiction pending a state determination, *is normally appropriate.*' (Emphasis added.)";

citing Wright, Federal Courts [1963 Ed.] p. 173. The opinion cites Wright further in a footnote:

" * * * If the state court to which deference is thus shown prejudices any federal rights of the parties, this can be redressed by review of the state decision in the United States Supreme Court." Op. cit. p. 173.

### ORDER

Now this 7th day of October, 1970, in accordance with the foregoing Opinion, the Motion of Defendants is granted, and the within action is dismissed.