**Sandra GOUR, Thomas Carpenter and Kimberly Cyr**

**v.**

**Gretchen MORSE, Secretary of Human Services**

**William Young, Commissioner of Social & Rehabilitation Services**

**Rolland Gerhart, Director of the Division of Licensing and Regulation.**

**Civ. A. No. 86–164.**

United States District Court, D. Vermont.

Jan. 23, 1987.

William A. Hunter, Rutland, Vt., for plaintiff.

Michael Duane, Atty. General's Office, State of Vt., Waterbury, Vt., for defendant.

Ron Shems, Asst. Atty. Gen., Waterbury, Vt., for Dept. of Social and Rehabilitation Services.

## OPINION AND ORDER

BILLINGS, District Judge.

On September 29, 1986, the United States Magistrate issued a report and recommendation in this § 1983 action. Both defendants and plaintiffs filed objections to the report. On December 1, 1986 this Court held a hearing on those objections at which defendants asked the Court to abstain from deciding this case under the *Burford* or *Younger* doctrines. This motion was supported and opposed by memoranda filed by each side. On the basis of these papers and the materials before it, and for the reasons outlined below, this Court DENIES defendants' motion to abstain. In addition, we partially adopt the recommendations of the magistrate, but substitute our opinion as laid out below.

## FACTS

Plaintiffs Sandra Gour, Thomas Carpenter, and Kimberly Cyr received licenses from the Vermont Department of Social and Rehabilitation Services to operate child day care services in their homes. In March 1986, plaintiff Cyr received a letter from defendant Gerhart, Director of the Division of Licensing and Regulation, stating that her registration would be revoked as of April 2, 1986, because of violations of Social and Rehabilitation Services regulations. The letter informed Cyr that she could request a fair hearing within 30 days, and she did so. While the hearing was pending, revocation of her license was stayed, and she continued to operate her business. The hearing was finally held and a decision rendered on October 21, 1986.

Plaintiff Carpenter received a similar letter in May 1985, revoking his license as of June 29, 1985. He also requested a hearing, but that hearing apparently has not occurred. His revocation, however, has been stayed pending resolution of the dis-

pute, and he has continued to operate his business.

Defendant Gerhart personally notified plaintiff Gour on May 30, 1986, that her registration was suspended on emergency grounds because of a substantiated charge of sexual abuse to one of the children in her care. A letter followed which stated that Gour's license was revoked as of June 29, 1986. She also requested a fair hearing, which was concluded and a decision rendered on October 21, 1986. Plaintiff has not been permitted to operate her business since May 30, 1986, however.

Plaintiffs allege primarily a violation of their due process rights under the fourteenth amendment. They challenge both the notice and procedures actually received and the procedures to be provided in the future. Plaintiffs seek a permanent injunction preventing defendants from revoking their licenses and a declaration that the statute creating the procedures is unconstitutional. Additionally, plaintiffs apparently raised four other constitutional claims before the magistrate. We do not address these supplemental claims, but adopt the magistrate's recommendations on their disposition.

Defendants ask the Court to abstain from deciding this case as the state's provided procedures are not completed. Further, they claim plaintiffs have received the process due them. We decline to abstain from this case, and we enjoin defendants from revoking plaintiffs' registrations until plaintiffs receive procedures consistent with this opinion.

## DISCUSSION

### I. *Abstention*

■ Defendants urge this Court to abstain from exercising its jurisdiction over this case on the basis of two alternative doctrines. First, defendants urge us to abstain under the doctrine of *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). In *Burford* the Supreme Court held that federal courts should abstain from interfering with cases involving comprehensive state regulatory schemes. The *Burford* case dealt with a complicated state system designed to conserve oil and gas in Texas. Because the production of oil and gas was so vital to the state's economy and the state itself had concentrated all direct review of the Railroad Commission's orders in one county's courts, the Court believed that the federal courts should not interfere with the state's attempts to maintain consistency in this particular area. The Court therefore affirmed the district court's decision to abstain from exercising its jurisdiction and to dismiss the complaint.

Defendants claim that this case is similar because the state has established a comprehensive regulatory scheme for a matter of substantial state concern. Unfortunately, we cannot agree with this characterization for two reasons. First, the *Burford* court was clearly concerned that federal court intervention would disrupt a state system that contained very detailed procedures and guidelines. Although the licensing of day care establishments is clearly of state concern, the procedures for regulating them are by no means as extensive as Texas's system in *Burford*. Nor is there any indication that federal court intervention would disrupt the state's system. Plaintiffs are in fact asking this Court to examine the constitutionality of the state's chosen procedures. This brings us to the second reason we cannot find *Burford* applicable. Plaintiffs in this case are not attacking the actual decision of a state agency; they are questioning the constitutionality of the procedures the state has provided. Although the Human Services Board and the Vermont Supreme Court could both hear the constitutional issues, there is no reason why the federal court should not hear the issues now that they are before us.

■ Defendants additionally suggest that we should abstain from exercising our valid federal jurisdiction under the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In *Younger* the Supreme Court held that a federal court should not exercise its equitable pow-

ers to interfere with an on-going state criminal proceeding because of the state's strong interest in the integrity of its criminal laws. Later cases expanded the doctrine to include civil proceedings. *See, e.g. Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (contempt proceedings); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (public assistance programs).

However, in this case no state judicial proceedings were pending at the time this case was filed in federal district court. Administrative hearings were pending, but plaintiffs' challenge is directly to the procedures in those hearings. Thus, the case of *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), is much more apropos than *Younger. Gibson* involved license revocation proceedings against certain Alabama optometrists. The court refused to defer to the pending state proceedings before the Alabama Board of Optometry because they were administrative, not judicial, proceedings and because the plaintiffs were challenging the make-up of the administrative board itself. This, the Court concluded, was *not* the sort of proceeding to which *Younger* contemplated deference. Our case is very similar—an administrative proceeding under procedural challenge. We follow the *Gibson* court and find this case to be an inappropriate one for abstention.

Finally, counseling against abstention is the Supreme Court's caution in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959)). "Abstention from the exercise of federal jurisdiction is the exception, not the rule. 'The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the

exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.'" As no important countervailing interest exists, we decline to abdicate our duty and therefore DENY defendants' motion to abstain.

II. *The Magistrate's Report and Recommendations*

On September 29, 1986, the Magistrate issued a report and recommendation in this § 1983 action. We decline to adopt these recommendations in toto, but we do agree with the magistrate's analysis on several issues.

Plaintiffs' primary claim is that the Department violated their procedural due process rights under the fourteenth amendment. They claim that they have been deprived of a property interest without due process of law because they did not receive a hearing before their registrations were revoked or suspended. Additionally, plaintiffs allege that any hearing before the Human Services Board would violate due process because the Board can only review the fact of the violation and not the sanction imposed by the Department. We will examine each claim in turn.

A. *Deprivation of Property Interest*

■ To maintain their due process claim plaintiffs must show 1) that they have a property interest protectable by the due process clause and 2) that defendants have deprived them of that property interest without due process of law. Plaintiffs claim that they have a protected property interest in their day care licenses. "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). Ver-

mont law plainly creates such a property interest. Title 33 V.S.A. § 2852 requires that a family day care center not be operated without a registration from SRS. Once issued, that registration can only be revoked "for cause after hearing." 33 V.S.A. § 2596(b)(3). Therefore, we agree with the magistrate that plaintiffs have a property interest in continued registration as a family day care home.

 Have defendants deprived plaintiffs of that property interest without due process of law? In the cases of plaintiffs Cyr and Carpenter, the scheduled revocations of their registrations have been stayed pending hearing. They have continued to operate their businesses in the interim. Therefore, we agree with the magistrate that plaintiffs Cyr and Carpenter have not been deprived of their property rights. Plaintiff Gour's registration was summarily suspended because of an apparently substantiated report of sexual abuse of a child in her care. As she has been prohibited from operating her business during that time, she clearly has been deprived of a protected property interest. However, we agree with the magistrate's analysis and adopt the section of his report that concludes that because the state has a strong interest in preventing child sexual abuse, summary suspension in substantiated cases is justified. In such cases due process provides for a prompt post-deprivation hearing. In *Loudermill* the Supreme Court found a nine month delay between the plaintiff's deprivation and conclusion of the hearing did not violate due process, see *Loudermill,* 470 U.S. at 547, 105 S.Ct. at 1496; the seven month delay in this case is therefore not necessarily constitutionally unsound. In addition, plaintiff Gour has

had a hearing, and her case has been remanded to the department for corrective action. As the state has clearly been providing Gour with opportunities to be heard during this time period, it would be premature for us to rule that the state had not yet provided "prompt" post-deprivation process. Thus, we have determined that the property rights of plaintiffs Cyr and Carpenter have not yet been deprived and that the rights of plaintiff Gour are adequately protected by a post-deprivation hearing. We must now consider whether the hearing provided to plaintiffs satisfies due process requirements.[1]

### B. Validity of the Process

█ The general requirement of due process is "that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493 (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950)). Plaintiffs here clearly received notice of the charges and action anticipated against them. They then were entitled to have "some kind of hearing"[2] before their registrations were revoked. What kind of hearing? Due process requirements have stopped far short of mandating that a particular process is necessary in any individual case. In this situation the state has developed extensive procedures and regulations for hearings. That is its prerogative. However, due process does not require the state to follow those procedures once they are set up. What procedures the state chooses and whether it follows them or not are issues of administrative law.[3] Due process only

---

1. Because plaintiffs Cyr and Carpenter have not yet been deprived of their property rights, the balance of the opinion must be, as to them, in the nature of a declaratory judgment. District courts have the authority to "declare the rights and other legal relations of any interested party" in any "case of actual controversy within its jurisdiction." 28 U.S.C. § 2201. "Any such declaration shall have the force and effect of a final judgment or decree...." *Id.* In addition, a district court may grant "[f]urther necessary or

proper relief based on a declaratory judgment," 28 U.S.C. § 2202, including an injunction. *Powell v. McCormack,* 395 U.S. 486, 499 (1969).

2. Friendly, "Some Kind of Hearing," 123 U.Pa.L. Rev. 1267 (1975).

3. For a more thorough discussion of the due process/administrative law dichotomy, see this Court's opinion and order in *St. George v.*

requires the bare minimum procedure—notice and an opportunity to respond. In this case, then, we must examine the procedures the state has set up, not to scrutinize their every detail, but merely to ensure that they do provide the minimum guarantees.

The state's procedures for revocation of family day care registrations is somewhat confusing. Section 2596 of 33 V.S.A. is the final section in Chapter 27 entitled Social and Rehabilitation Services of the State of Vermont. The Department of Social and Rehabilitation Services (SRS) is a division in the Agency of Human Services ("Agency"). 3 V.S.A. § 3053. Yet Chapter 27 of Title 33 deals with the duties, policies and administrative provisions of SRS exclusively. Within Chapter 27, section 2596(b) provides regulations for "licenses which the commissioner or department may issue or grant." It then provides that "[a] license may be revoked for cause after hearing and may be suspended in situations which immediately imperil the health, safety or well-being of persons in the care of the licensee." Notably, this section does not identify who may revoke the license and *who* must hold the hearing. The implication from the title and arrangement of the Chapter is that those duties lie with SRS.

The practice of the Agency and SRS, however, apparently is for the Human Services Board to hold all hearings. The Human Services Board ("Board") is created in Chapter 53 of Title 3 as a board within the Agency of Human Services. Its duties are "to act as a fair hearing board on appeals." 3 V.S.A. § 3090. Further, the opportunity for a fair hearing is granted to any licensee who *"may* file a request for a fair hearing ... because he is aggrieved by any ... agency action." 3 V.S.A. § 3091 (emphasis added). This permissive language and the enabling statute suggest that the Board is intended to be an appellate body, reviewing the decisions of a lower decisionmaker.

██ Plaintiffs' claim is that the state's procedure does not provide them with due process because the Board, which actually holds the license revocation hearing, cannot review the sanction imposed by SRS. We agree that the Board's jurisdiction is limited. Section 3091(d) of Title 3 provides that "[t]he board shall not reverse or modify agency decisions which are determined to be in compliance with applicable law, even though the board may disagree with the results effected by those decisions." The Vermont Supreme Court has indicated that this provision permits the Board to reverse an SRS revocation decision if it finds the decision is unfounded, but not if it merely believes revocation was an incorrect sanction. *Huntington v. Department of Social and Rehabilitation Services,* 139 Vt. 416, 417–18, 430 A.2d 460 (1981). Therefore, if the Board were the body authorized to hold the hearing required by due process prior to revocation we would have to agree with plaintiffs that section 3091(d), as applied to the revocation of licenses granted by SRS, was unconstitutional. The hearing required by due process must have to include not merely the ability to respond to the merits of the charges against one, but also to the propriety of the sanction imposed.

However, we do not believe that the state statutory scheme authorizes the Board to hold the hearing that due process requires. The Board is authorized to hear appeals from agency action. 3 V.S.A. § 3091. Yet due process requires that plaintiffs receive a hearing *before* the agency acts. Therefore, the statute does not authorize the Board to hold a hearing that comports with due process. It is SRS that must provide the required due process procedures.

We note that our opinion concurs with the actions taken by the Board in the cases of plaintiffs Cyr and Gour. After a full hearing the Board remanded both cases to SRS because, it said, SRS "has an obligation to notify registrants of proposed actions, along with reasons prior to revocation and as soon as possible after suspension, so that registrants may have an op-

*Thompson,* No. 84–78, at 3–5 (Dec. 12, 1986) and the cases cited therein.

portunity to respond to these proposals and appeal to the discretion of the Department with regard to the proposed action before it is initiated." *In re Appeal of Kimberly Cyr and Sandra Gour,* Nos. 7265 and 7400 at 38–39. (Vt. Human Servs. Bd. Oct. 27, 1986). In other words, the Board recognized that given the structure of the state statutory scheme, SRS must provide plaintiffs with the required notice and opportunity to respond.

To determine exactly what process SRS must provide to satisfy due process, we must apply the balancing test established by *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). This test directs us to weigh the significance of the plaintiffs' interest in maintaining their registrations, the government's interest in licensing only satisfactory day care homes and avoiding administrative burdens, and the risk of an erroneous revocation. *See Loudermill,* 470 U.S. at 543, 105 S.Ct. at 1494. The Plaintiffs' interest in continued registration is similar to an employee's interest in continued employment. In fact, because a day care operator must be licensed by the state, his or her interest in maintaining a license is arguably stronger than that of an employee who can seek identical employment in the private sector. The Supreme Court has "frequently recognized the severity of depriving a person of the means of livelihood." *Id.* (citing cases). Additionally, the Supreme Court points out that "[e]ven where the facts are clear, the appropriateness or necessity of the [revocation] may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect." *Id.* As plaintiffs have asserted, the appellate Board cannot review the appropriateness of the revocation; that is all the more reason why plaintiffs must have a meaningful opportunity to present their arguments to SRS.

■ The government's interest in immediate revocation does not outweigh these individual interests. SRS can suspend any license it fears risks public health or safe-ty, and its need to revoke for lesser violations is not as compelling as the individual's need to make a living. The government does, however, have an interest in keeping administrative burdens to a minimum. As in *Loudermill,* Vermont's scheme provides for full evidentiary review before the Human Services Board and judicial review by the Vermont Supreme Court. Therefore, as in *Loudermill,* SRS need not hold a full-blown evidentiary hearing before revocation. We do, of course, find one significant difference in this case. Because the Board cannot review the propriety of the sanction imposed, revocation, but can only decide whether SRS's decision is within the law, plaintiffs' only opportunity for hearing on that issue is before SRS. We do not, however, believe that the situation warrants requiring SRS to hold a full-blown evidentiary hearing. SRS must, though, provide licensees whose registration they intend to revoke with oral or written notice of the charges against them, an explanation of the department's evidence, and an opportunity to present reasons, even if only in writing, why the proposed action should not be taken. See *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495.

## ORDER

Plaintiffs seek a permanent injunction restraining defendants from revoking plaintiffs' registrations. In accordance with our extensive opinion here, we grant that request and enjoin defendants from revoking plaintiffs' registrations until defendants have provided plaintiffs with the due process procedures set forth above.

In general, to receive a permanent injunction a party must show that he or she will suffer continuing irreparable injury if the injunction is granted and that he or she has no adequate remedy at law. See *Newman v. State of Alabama,* 683 F.2d 1312, 1319 (5th Cir.1982), *cert. denied* 460 U.S. 1083, 103 S.Ct. 1773, 76 L.Ed.2d 346 (1983); *Burris v. Turnbo,* 743 F.2d 693 (9th Cir. 1984); 11 Wright, Miller and Cooper, *Federal Practice and Procedure* § 2944. Here, plaintiffs clearly have no remedy at law that would adequately compensate

them for having their licenses revoked without due process of law. The magistrate recommended that the injunction be denied because plaintiffs demonstrated no irreparable injury, defining irreparable injury as injury for which money cannot adequately compensate. See Magistrate's Report at 17. We, however, agree with Wright, Miller & Cooper that once a deprivation of a constitutional right has been proved, no further showing of irreparable injury is necessary. See 11 Wright, Miller & Cooper, *Federal Practice and Procedure* § 2948 at 440. Constitutional rights are so basic to our society that their deprivation must be redressable by equitable remedies. Injury from their deprivation is almost by definition irreparable. We find, therefore, that plaintiffs have met their burden and are entitled to a permanent injunction.

Accordingly, we order that defendants are enjoined from revoking plaintiffs' registrations until they provide plaintiffs with a due process proceeding consistent with this opinion.

SO ORDERED.