**Jess Wesley CRAWFORD, Plaintiff,**

v.

**GENUINE PARTS CO., a Georgia corporation; and Echlin, Inc., a Connecticut corporation, Defendants.**

**Diane LaPLANTE and Rodney Lane, Plaintiffs,**

v.

**GENUINE PARTS CO., formerly NPA Automotive Parts & Accessories; Echlin Inc., formerly Echlin Manufacturing Company, Defendants.**

**Nos. CV–87–013–GF, CV–87–040–GF.**

United States District Court, D. Montana, Great Falls Division.

May 8, 1990.

Joseph R. Marra, Dan Spoon, Marra, Wenz, Johnson & Hopkins, Great Falls, Mont., for plaintiff.

Dennis P. Clarke, Smith, Walsh, Clarke & Gregoire, Great Falls, Mont., for defendants.

Edmund F. Sheehy, Jr., Cannon & Sheehy, Helena, Mont., for Kim Crawford on Attys. Lien only.

## MEMORANDUM AND ORDER

HATFIELD, Chief Judge.

These consolidated personal injury actions have their genesis in a vehicular mishap which occurred on U.S. Highway No. 89, at a location within the exterior boundaries of the Blackfeet Indian Reservation, Montana. Both actions were initially instituted in the district court of the State of Montana. Approximately two and one-half years after the actions were filed in state court, plaintiffs in both actions effected settlement with, and voluntarily dismissed, all nondiverse defendants. Genuine Parts Company and Echlin, Inc., both non-resident corporations, then removed both actions to this court, pursuant to 28 U.S.C. § 1441. On April 10, 1989, over two years after the actions were removed to this court, and less than thirty days prior to the time the actions were set for trial, plaintiffs moved the court to stay these proceedings until such time as the plaintiffs could institute identical proceedings in the tribal court system of the Blackfeet Indian Reservation. Plaintiffs, all Indian persons, and members of the Blackfeet Tribe of Indians, impress upon the court the Blackfeet Tribal Court must be afforded the opportunity to determine that entity's jurisdiction over the subject matter of this controversy.

The plaintiffs' motion is predicated upon a dilatory invocation of the "exhaustion rule" first enunciated in *National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 105 S.Ct. 2447, 85

L.Ed.2d 818 (1985),[1] and extended in *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987).[2] The issue to be determined is whether this court must abstain from exercising diversity jurisdiction over the subject matter of these controversies until it has afforded the tribal court system of the Blackfeet Indian Reservation an opportunity, in the first instance, to determine the propriety of that entity asserting jurisdiction over these controversies.

## I.

The plaintiffs, Jess Crawford, Diane LaPlante and Rodney Lane, all members of the Blackfeet Indian Tribe, were allegedly injured on February 24, 1983, when a vehicle, being driven by Crawford within the boundaries of the Blackfeet Indian Reservation, overturned. On July 13, 1984, plaintiff Crawford filed suit in the District Court of the Eighth Judicial District of the State of Montana. Crawford advanced claims for relief against multiple defendants based upon various theories of liability.[3] With specific reference to the defendants, Genuine Parts Company and Echlin, Inc., Crawford alleged the mishap, and consequent injuries he sustained, were caused by the failure of replacement parts for the vehicle braking system which were manufactured and/or marketed by the defendants.

Plaintiffs, Diane LaPlante and Rodney Lane, passengers in the Crawford vehicle at the time of the mishap, filed a joint complaint in the District Court of the Eighth Judicial District of the State of Montana on September 25, 1984. The complaint of the latter plaintiffs essentially mimicked the claims of Crawford.

Both Genuine Parts Company and Echlin, Inc., have their principal places of business in states other than Montana. The master cylinder rebuild kit at issue was manufactured outside the State of Montana and was sold at a retail outlet in Columbia Falls, Montana; a location outside the boundaries of the Blackfeet Indian Reservation. Installation of the master cylinder kit in the Crawford vehicle, as well as Crawford's purchase of the vehicle, occurred at locations outside the reservation boundaries. In sum, with the exception of the mishap itself, all transactions relating to the plaintiffs' causes of actions occurred outside the boundaries of the Blackfeet Indian Reservation.

Plaintiffs take the position the present situation falls within the ambit of the "exhaustion rule" announced in *National Farmers Union*. Because the vehicular mishap occurred within the exterior boundaries of the Blackfeet Indian Reservation, they submit this court must refrain from exercising diversity jurisdiction, and, for reasons of comity, defer to the Blackfeet Tribal Court, in order to allow that entity to examine, in the first instance, whether it has the power to exercise jurisdiction over the subject matter of these controversies.

## II.

The Supreme Court has repeatedly recognized that tribal courts have inherent power to adjudicate civil disputes affecting the interests of Indians and non-Indians which are based upon events occurring on a reservation. *See, e.g., Montana v. United States*, 450 U.S. 544, 566, 101 S.Ct. 1245, 1258, 67 L.Ed.2d 493 (1981); *Santa Clara Pueblo v. Martinez*, 436 U.S.

---

**1.** In *National Farmers,* non-Indian plaintiffs directly challenged the right of the tribal court to assert civil jurisdiction over them. Invoking the jurisdiction of the federal district court pursuant to 28 U.S.C. § 1331, the plaintiffs sought to enjoin the tribal court proceedings.

**2.** In *LaPlante,* the Court, relying upon rationale underlying its decision in *National Farmers Union,* held that a federal court may not exercise diversity jurisdiction over a civil dispute relating to reservation affairs before an appropriate Indian tribal court system has had an opportu-

nity to determine its own jurisdiction. 480 U.S. at 16, 107 S.Ct. at 977.

**3.** Asserting the cause of the mishap was the failure of the braking system in the vehicle, Crawford named as defendants: the used car dealership from which he purchased the vehicle, the car service entity which had serviced the brake system of the vehicle, and those commercial entities which manufactured and/or marketed the brake master cylinder rebuild kit which was installed in the vehicle.

49, 65, 98 S.Ct. 1670, 1680, 56 L.Ed.2d 106 (1978). This authority emanates from the fact the several Indian tribes, as sovereign entities, possess the necessary attributes of sovereignty over both their members and their territory. *United States v. Wheeler*, 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978); *United States v. Mazurie*, 419 U.S. 544, 557, 95 S.Ct. 710, 717, 42 L.Ed.2d 706 (1975). The sovereignty enjoyed by Indian tribes, however, is not absolute. Rather, it is subject to limitation by specific treaty provisions, by statute at the will of Congress, by portions of the Federal Constitution found especially binding on the tribes, or by implication due to the tribes' dependent status. *See, United States v. Wheeler, supra*, 435 U.S. at 322–326, 98 S.Ct. at 1085–1088; *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 14, 107 S.Ct. 971, 975, 94 L.Ed.2d 10 (1987); *Babbitt Ford, Inc. v. Navajo Indian Tribe*, 710 F.2d 587, 591 (9th Cir.1983).

A recurring issue involving Indian tribal sovereignty is to what extent the tribes retain the inherent power to exercise civil subject matter jurisdiction over the activities of non-Indians on the reservation. The United States Supreme Court has addressed the limitations on tribal sovereignty with respect to the assertion of civil jurisdiction over non-Indians. In the case of *Montana v. United States*, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), the Court reiterated the general proposition that the inherent sovereign powers of an Indian tribe do not extend to the activities of non-members of the tribe. *Id.* at 565, 101 S.Ct. at 1258. Recognizing the dependent status of the tribes necessarily entails a divestiture of some attributes of sovereignty, the Court endeavored to delineate the extent to which the Indian tribes retain their inherent sovereign power to exercise civil jurisdiction over the activities of non-Indians occurring within a reservation. The Court concluded:

A tribe may regulate through taxation, licensing or other means, the activities of non-members who enter consensual relationships with the tribe or its members, through commercial dealings, contracts, leases, or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within the reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe. 450 U.S. at 565–566, 101 S.Ct. at 1258 (citations omitted).

These two narrowly prescribed exceptions to the implicit divestiture of the sovereign power of the Indian tribes to control the activities of non-members would seem to provide the only basis upon which an Indian tribe possesses civil jurisdiction over a non-Indian.

 The question of whether an Indian tribe retains the authority to compel a non-Indian to submit to the jurisdiction of a tribal court presents a question of federal law, properly determined by the federal courts; the final arbiters of federal law. *National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 852, 105 S.Ct. 2447, 2451, 85 L.Ed.2d 818 (1985).[4] Nonetheless, considerations of comity, predicated upon the well recognized Congressional policy of promoting tribal self-government and self-determination, compelled the Court in *National Farmers Union* to announce a rule of exhaustion, which requires tribal court remedies to be exhausted before the question of tribal jurisdiction is addressed by the federal courts. 471 U.S. at 856–57, 105 S.Ct. at 2453–54. The Court concluded proper respect for tribal legal institutions required the federal courts to afford those tribunals a full opportunity to consider the issues before them, and to rectify any errors. 471 U.S. at 857, 105 S.Ct. at 2454. Unconditional access to the federal forum, the Court reasoned, would contravene the federal policy

---

4. In *National Farmers Union*, the Supreme Court recognized the question of whether a tribal court has exceeded its jurisdiction must be answered by reference to federal law. 471 U.S. at 853, 105 S.Ct. at 2452. Consequently, the Court held that a federal court possesses jurisdiction under 28 U.S.C. § 1331 to determine whether a tribal court has exceeded the lawful limits of its jurisdiction. 471 U.S. at 853, 105 S.Ct. at 2452.

supporting tribal self-government by placing the federal courts "in direct competition with the tribal courts, thereby impairing the latter's authority over reservation affairs." *Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. at 16, 107 S.Ct. at 977.

The principle of federal deference embodied in the "exhaustion rule" is compelling regardless of whether federal jurisdiction is grounded in diversity of citizenship or federal question:

> Regardless of the basis for jurisdiction, federal policy supporting tribal self-government directs a federal court to stay its hand in order to give the tribal court a full opportunity to determine its own jurisdiction. In diversity cases, as well as federal question cases, unconditional access to the federal forum would place it in direct competition with tribal courts, thereby impairing the latter's authority.

*Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. at 16, 107 S.Ct. at 977 (citation omitted).

■ The paradigm case calling for application of the "exhaustion rule" is, of course, one like *National Farmers Union,* where the jurisdiction of a tribal court over a controversy pending before that tribunal, is directly challenged by way of an action for declaratory judgment in federal court. 471 U.S. at 856, 105 S.Ct. at 2454. However, in *Iowa Mutual,* the Court extended the "exhaustion rule" to preclude federal court adjudication of the merits of a controversy pending in a tribal court, regardless of the fact the federal court's jurisdiction was concurrent with the tribal court. *Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. at 16 n. 8, 107 S.Ct. at 976 n. 8. The Court deemed it imperative that federal courts refrain from intervening until the tribal legal institutions had a full opportunity to evaluate the claim. 480 U.S. at 16, 107 S.Ct. at 977. The Court drew no distinction

between the situation where the purpose of the federal action was to directly challenge the tribal court's jurisdiction over a pending case, and the situation where the merits of the controversy were simply placed before the federal court. 480 U.S. at 9, 107 S.Ct. at 971.[5] The general proposition emerges from these cases that the federal courts, as a matter of comity, must refrain from exercising jurisdiction where the exercise of that jurisdiction would interfere, directly or indirectly, with a tribal legal institution's opportunity to consider the issues before them.

Since *Iowa Mutual,* the court of appeals for this circuit has interpreted the "exhaustion rule" to require exhaustion of tribal court remedies with respect to a civil controversy arising in Indian territory, irrespective of whether proceedings involving the same controversy are actually pending in the tribal forum. *See, Wellman v. Chevron U.S.A., Inc.,* 815 F.2d 577 (9th Cir.1987). *Wellman* was a breach of contract action instituted in this court by a Blackfeet Indian contractor against a non-Indian corporation. Jurisdiction was founded upon diversity of citizenship. The subject contract involved work which was to have been performed on reservation lands. This court dismissed the action for lack of subject matter jurisdiction. Upon appeal, the Ninth Circuit Court of Appeals held the action was properly dismissed upon the basis of comity, rather than lack of subject matter jurisdiction. *Wellman v. Chevron, U.S.A., Inc.,* 815 F.2d 577, 578. The court concluded the parties to a civil dispute arising in Indian territory are limited to tribal court as the forum of "first recourse". 815 F.2d at 579. *Wellman* would appear to stand for the proposition that tribal remedies must be exhausted before a federal court, in the exercise of diversity jurisdiction, may address the merits of a civil action concerning a dispute

---

**5.** On this point, Justice Stevens, author of the majority opinion in *National Farmers Union,* disagreed with the opinion of the majority in *Iowa Mutual.* In his view: "[t]he deference given to the deliberations of Tribal Courts on the merits of a dispute, however, is a separate matter as to which *National Farmers Union* offers no controlling precedent.... The mere fact that a case involving the same issue is

pending in another court has never been considered a sufficient reason to excuse a federal court from performing its duty to adjudicate a controversy properly before it." 480 U.S. at 21–22, 107 S.Ct. at 979–80 (Stevens, J., dissenting) (*citing, County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)).

which arose in Indian territory. *See, Stock West, Inc. v. Confederated Tribes,* 873 F.2d 1221, 1227 (9th Cir.1989).[6]

The cases at bar present themselves in a procedural posture distinct from that presented in *National Farmers Union, Iowa Mutual* or any of the cases discussed which have interpreted and applied the "exhaustion rule". First, the cases were not originally filed in federal court, but were removed to the federal forum on the basis of diversity of citizenship. Second, the cases were instituted, and actively prosecuted for a significant time in both this court and the Montana court system, by those same parties who now invoke the "exhaustion rule". Third, significant judicial resources, both state and federal, were expended in the disposition of a myriad of procedural and substantive legal issues during the pretrial proceedings; proceedings which the movants instituted and participated in without objection. The question necessarily arises whether each of these factors should bear upon the propriety of this court deferring to the Blackfeet Tribal Court in the interest of fostering comity between the respective sovereigns. Because the precise dimensions of the "exhaustion rule" remain to be defined, the answer to this inquiry is not readily apparent.[7]

The question of what result should obtain from a party's failure to timely invoke the exhaustion rule might be answered in three different ways.[8] First, the movants' failure to timely assert the "exhaustion rule" as mandating deference to the Tribal Court might be treated as a procedural default precluding the movants from relying upon the rule. Second, and at the other extreme, the nonexhaustion might be treated as an inflexible bar to consideration of the merits of the case. Or, third, the court may conclude it is vested with the discretion to decide, in each case, whether the administration of justice would be better served by insisting on exhaustion or by reaching the merits of the action forthwith. 481 U.S. at 131, 107 S.Ct. at 1673.

The plaintiffs would have the court adopt the view that the "exhaustion rule" represents an inflexible bar, which precludes this court from addressing, in the first instance, the merits of a civil dispute which arose on an Indian reservation. The court is unpersuaded this extreme position is explicit in the holdings in *National Farmers Union* or *Iowa Mutual.*[9] The argument would have more superficial appeal if the federal action was the paradigm case, as in *National Farmers Union,* wherein the federal action directly challenged the jurisdiction of a Tribal Court over a case pend-

---

**6.** It is imperative to note the defendant in *Wellman* invoked the exhaustion at the time of its initial appearance.

**7.** Guidance in resolving the query, however, may be found in review of the principle of comity as it has evolved in the context of state and federal relations. Support for this analogy is found in *Iowa Mutual,* where Justice Marshall, speaking for the majority, expressly acknowledged the "exhaustion rule" enunciated in *National Farmers Union* is analogous to the principle of abstention articulated in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). *Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. at 13 n. 4, 107 S.Ct. at 975 n. 4. "In *Colorado River,* as here, strong federal policy concerns favored resolution in the nonfederal forum." *Id.* (*citing, Colorado River,* 424 U.S. at 819, 96 S.Ct. at 1247). Likewise, the court of appeals for this circuit has recognized the analogous nature of these abstention doctrines. *See, Stock West, Inc. v. Confederated Tribes, supra,* 873 F.2d at 1229. (Holding the abuse of discretion standard applies to appellate court review

of district court's dismissal of action in favor of tribal court proceedings).

**8.** The Supreme Court recently had occasion, in the context of habeas corpus proceedings under 28 U.S.C. § 2254, to address the effect to be afforded a state's failure to raise the defense of "non-exhaustion" of state remedies. *Granberry v. Greer,* 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1986). The analytical framework employed by the Court in *Granberry* lends itself to utilization in the present context.

**9.** In relation to the idea of non-exhaustion being an "inflexible" bar, the opinion in *Granberry* refers to the Court's decisions in *Iowa Mutual* and *National Farmers Union.* 481 U.S. at 131, n. 4, 107 S.Ct. at 1673 n. 4. The reference parenthetically indicates *Iowa Mutual* held "[a] district court may not exercise diversity jurisdiction until remedies in parallel tribal court proceeding may have been exhausted." The reference further indicates *National Farmers Union* establishes "comity requires that tribal remedies be exhausted before district court considers issue of tribal court jurisdiction." These referenc-

ing before it. Likewise, non-exhaustion may prove an inflexible bar to a determination on the merits, in federal court, of a civil controversy which is the subject of pending proceedings in a tribal court. In both of these situations, however, "unconditional access to the federal forum would place the federal courts in direct competition with tribal courts" and deprive the tribal legal institutions of a "full opportunity to consider the issues before it and to rectify any errors." *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. at 16, 107 S.Ct. at 977.

The necessity of deferring to tribal courts is certainly less compelling when no party to the federal court proceedings has availed himself of the tribal forum, or, at the very least, timely requested the federal court to afford him the opportunity to do so. Reason alone would dictate that in such a circumstance, the federal court consider whether an insistence on exhaustion of tribal court remedies would prove conducive to either the promotion of tribal selfgovernment or the orderly administration of justice; the principal considerations upon which the exhaustion rule is bottomed. *See, Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. at 16, 107 S.Ct. at 977; *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. at 856, 105 S.Ct. at 2454.

The orderly administration of justice would hardly be promoted by the adoption of a rule which would allow a party to invoke the jurisdiction of the federal court, heedlessly proceed to avail himself of federal judicial resources, and yet not require the party to timely request the opportunity to seek recourse in the tribal forum. In that vein, the court finds it doubtful that respect for the tribal court system would be advanced, to any degree, by the adoption of a rule which would lend itself to procedural "fencing".

Considerations of wise judicial administration compel the court to hold that the failure of the plaintiffs to seasonably avail themselves of the opportunity to adjudicate this controversy in the Blackfeet Tribal Court precludes them from invoking the "exhaustion rule". This court need not stay its hand at this juncture. The federal courts' "virtually unflagging obligation" to exercise the jurisdiction given them, *England v. Medical Examiners*, 375 U.S. 411, 415, 84 S.Ct. 461, 464, 11 L.Ed.2d 440 (1964), need not yield under the circumstances of this case. Therefore,

IT IS HEREBY ORDERED that the joint motion of the plaintiffs requesting a stay of these proceedings be, and the same hereby is, DENIED. The parties are advised the court shall consider the propriety of certifying an interlocutory appeal of the present order upon proper application of any party.

---

es to *Iowa Mutual* and *National Farmers Union* should not be viewed as dispositive of the precise issue *sub judice*. The Court's holdings in those cases cannot be divorced from their factual underpinnings. In *Iowa Mutual* parallel tribal court proceedings were pending. In *National Farmers Union*, the jurisdiction of the tribal court was being subjected to a direct challenge over proceedings pending before it in federal court. Granted, nonexhaustion may be inflexi-

ble where parallel tribal court proceedings are pending. However, this court does not perceive the references as either an express or implied adoption by the Court of an inflexible rule of exhaustion which would serve to preclude the federal courts from exercising jurisdiction, in the first instance, over the merits of any civil dispute having its genesis in a transaction which occurred within an Indian reservation.