# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CA-00382-SCT

*STUART HARRISON*

*v.*

*YVONNE ELLIS, BRYAN PAGE, ALANEA ELLIS AND*
*BOYD MISSISSIPPI, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/31/96 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDWARD A. WILLIAMSON |
| ATTORNEY FOR APPELLEES: | RICHARD C. WILLIAMS, JR. |
| NATURE OF THE CASE: | CIVIL - TORTS (OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE) |
| DISPOSITION: | REVERSED AND REMANDED - 5-22-97 |
| MOTION FOR REHEARING FILED: | 6/5/97 |
| MANDATE ISSUED: | 10/16/97 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. Stewart Harrison appeals from an order of the Circuit Court of Hinds County dismissing his complaint against Yvonne Ellis, Bryan Page, Alanea Ellis, and Boyd Mississippi, Inc. pursuant to motion of the defendant Boyd under Mississippi Rule of Civil Procedure 12(b)(l). On appeal, Harrison contends that the circuit court erroneously found that it lacked subject matter jurisdiction. We agree and reverse and remand.

## FACTS

¶2. Stuart Harrison, the plaintiff, was employed by Boyd Mississippi, Inc. ("Boyd") as a craps dealer at the Silver Star Casino in Neshoba County, Mississippi. The Silver Star Casino is wholly owned by the Mississippi Band of Choctaw Indians, but is operated and managed by Boyd, a Nevada Corporation, pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. § 2710(d)(8)(D)(9). The Silver Star Casino is located and all incidents occurred on Choctaw Indian country.[1] Neither the plaintiff Harrison nor any of the defendants are members of the Choctaw band.

¶3. On July 13, 1995, the off duty Harrison was with his father and two friends in the proximity of the craps tables where he normally works when he was approached by security officers employed by Boyd. Tribal gaming regulations prohibit casino employees "from gaming in their gaming area."

¶4. The security personnel asked Harrison to go into the back offices and speak with a supervisor. Harrison refused stating that he did not want to speak with a supervisor, but would prefer to instead go home. The security personnel wrestled the resisting Harrison to the ground, handcuffed him, and refused to allow him to leave. After the altercation, the security personnel, all of whom were Boyd employees, took Harrison to the detention facilities of the Mississippi Band of Choctaw Indians. Harrison was then transferred to the Neshoba County Jail where he was confined until bond was made.

¶5. Harrison filed suit in the Circuit Court of Hinds County alleging that the actions of the defendant's agents, servants, and employees constituted battery, false imprisonment, false detention, and kidnaping. Harrison named Boyd Mississippi, Inc. as a defendant, but did not include the Mississippi Band of Choctaw Indians.

## DISCUSSION

### 1) Standard of Review

¶6. Jurisdictional issues are reviewed by the Mississippi Supreme Court *de novo*. *McDaniel v. Ritter*, 556 So. 2d 303, 308 (Miss. 1989). "In making this determination, this Court is in the same position as the trial court, since all facts are set out in the pleadings or exhibits, and the chancellor may be reversed if he erred whether the error was manifest or not." *MISS CAL 204, LTD. v. Upchurch*, 465 So. 2d 326, 330 (Miss. 1985)(determining jurisdiction over foreign corporation). However, the Court should proceed on the assumption that when the trial court made no specific finding, all fact issues were resolved in favor of appellee. *Newsom v. Newsom*, 557 So. 2d 511, 514 (Miss. 1990).

¶7. The Mississippi Constitution grants to the circuit courts "original jurisdiction in all matters civil and criminal in this state not vested by this Constitution in some other court. . . ." Miss. Const. art. 6, § 156. "In reviewing a subject matter jurisdiction challenge to the Constitution's grant of authority, the Supreme Court looks at the type of case by examining the nature of the controversy and the relief sought. *Singing River Mall Co. v. Mark Fields, Inc.*, 599 So. 2d 938, 942 (Miss. 1992). *See also Hood v. Dep't of Wildlife Conservation*, 571 So. 2d 263, 266 (Miss. 1990). As in *Singing River Mall*, the question is limited to whether Mississippi or federal law authorizes some other body to entertain this case, therefore, giving the trial court judge the authority to dismiss this case.

## ISSUE

**THE CIRCUIT COURT OF HINDS COUNTY, MISSISSIPPI POSSESSES JURISDICTION OVER BOYD MISSISSIPPI, INC., A NON-INDIAN NEVADA CORPORATION**.

¶8. The circuit judge below found that "the cause of action arose within the boundaries of the tribal reservation of the Mississippi Band of Choctaw Indians (more specifically the Silver Star Casino). . . ." He applied the "center of gravity" rule and found that "substantial tribal interests are present in this

controversy and the sovereignty of the Mississippi Band of Choctaw Indians must be recognized by this Court."

¶9. We note at the outset, as stated in the amicus brief filed by the Mississippi Band of Choctaw Indians, that a "state court would determine its own jurisdiction and the same is true for Tribal Courts."

¶10. Article 6, § 156 of the Mississippi Constitution states in whole as follows:

> The circuit court shall have original jurisdiction in all matters civil and criminal in this state not vested by this Constitution in some other court, and such appellate jurisdiction as shall be prescribed by law.

¶11. No party to this action has challenged the subject matter or in personam jurisdiction of the Circuit Court of Hinds County in this proceeding. Since the lower court possessed jurisdiction and no cause was pending in the tribal courts, did the lower court err in dismissing the complaint?

### A. The "center of gravity" analysis is inapplicable in the instant case.

¶12. The lower court based its decision to dismiss the plaintiffs cause of action on "the center of gravity" analysis. The center of gravity test[2] is used to determine which state's laws apply when the substantive laws of the forum court conflict with the law of a sister state or foreign jurisdiction. See *McDaniel v. Ritter*, 556 So. 2d 303, 310 (Miss. 1989); *Boardman v. United Serv. Automobile Ass'n.*, 470 So. 2d 1024 (Miss. 1985); *Vick v. Cochran*, 316 So. 2d 242 (Miss. 1975); *Mitchell v. Craft*, 211 So. 2d 509 (Miss. 1968); *Craig v. Columbus Compress & Warehouse Co.*, 210 So. 2d 645, 649 (Miss. 1968).

¶13. In the present action, the substantive tort law grounding the cause of action is identical under both state and tribal law. Thus, the center of gravity analysis is inappropriate in this proceeding.

### B. The doctrine of comity does not compel Mississippi courts to defer to Tribal courts.

¶14. Boyd argues that the lower court's dismissal should be upheld based upon the principle of comity. Comity suggests that forum courts, as a matter of judicial courtesy, should give effect to the laws and judicial decisions of other courts beyond that mandated by the full faith and credit clause of the United States Constitution. U.S. Const. art. IV, § 1.

¶15. Comity, however, should not be applied when its application would render meaningless substantial rights of the non-moving party. Further, comity is inapplicable when the substantive law of the foreign jurisdiction is unknown or not reasonably predictable. The forum court must also balance the rights of its own citizens against any interests suggested by the proponents of the law of the foreign jurisdiction. Finally, the courtesy of comity should not be considered when the subject matter jurisdiction of the non-forum court is in question. Finding that the tribal courts lack subject matter jurisdiction in this case, we decline to further examine the doctrine of comity in this proceeding.

### C. The tribal courts of the Mississippi Band of Choctaw Indians lack subject matter jurisdiction over the present course of action.

¶16. The case sub judice is not the first word in Mississippi on the subject of the jurisdictional parameters of the tribal courts of the Mississippi Band of Choctaw Indians.

¶17. In *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30 (1989), the United States Supreme Court dealt with the Mississippi chancery court adoption of two minor children, the unmarried parents of whom were both enrolled members of the Mississippi Band of Choctaw Indians. The children were born in Harrison County, Mississippi and the parents both executed consent-to-adoption forms. The band sought unsuccessfully before this court to vacate the adoption and appealed ultimately to the U.S. Supreme Court which found that even though the natural parents had both consented to the adoption, that Congressional intent and tribal interests outweighed any individual rights possessed by the parents and that pursuant to the Indian Child Welfare Act of 1978, the rights of the Band, not the welfare of the children, should prevail. The adoption decree, which had been upheld by this Court, was reversed and the issue was ultimately, upon remand, transferred to the tribal court.

¶18. *Holyfield* grants exclusive jurisdiction of adoption proceedings concerning Indian children to the tribal courts pursuant to the Indian Child Welfare Act. Specifically Section 1911 (a) of this act states in full as follows:

> An Indian tribe shall have jurisdiction exclusive as to any state over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

*¶19. Holyfield* is consistent with prior U.S. Supreme Court renderings which establish that tribal courts have authority to punish tribal offenders, to determine tribal membership, to regulate domestic relations among members and to prescribe rules of inheritance for members of the Band. *See Montana v. United States*, 450 U.S. 544 (1981).

¶20. *Montana* must be read in conjunction with *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191 (1978) in which the United States Supreme Court held that Oliphant, a non-Indian, could not be tried within the tribal court even though the incident occurred on tribal territory. *Oliphant*, 435 U.S. at 198. The Court stated that "Indian tribes cannot exercise power inconsistent with their diminished status as sovereigns. . . (and) have lost any right of governing every person within their limits except themselves." *Id.* at 209.

¶21. *Montana* states that "Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of non-members who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Montana*, 435 U.S. at 510 (citations omitted).

¶22. *Montana* further adds "A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security or the health or welfare of the tribe." *Id.* at 511 (citations omitted).

¶23. The United States Supreme Court has further fleshed out the *Montana* analysis to state that an Indian tribe has no "inherent sovereign powers over the activities of non-members" outside the above named two exceptions. *South Dakota v. Bourland*, 508 U.S. 679 (1993). *Bourland* in fact states that "after *Montana,* tribal sovereignty over non-members 'cannot survive without express congressional delegation.'" *Bourland,* 508 U.S. at 695 n.15.[(3)] The *Montana* rule was most recently applied, consistently with *Bourland*, by the Supreme Court in *Strate v. A-1 Contractors*, 117 S.Ct. 1404 (1997).

¶24. Before applying the above line of decisions to the present case, we note initially that the parties cite no congressional authority granting jurisdiction to tribal courts over common-law tort cases between non-Indians.

¶25. We first confront the question of whether this case deals with "consensual relationships with the tribe or its members through commercial dealings, contracts, leases, or other arrangements." We answer this question in the negative. The case at bar concerns a tort action, not a contract, lease or other arrangement. No consensual relationship exists between the plaintiff and the Band of Choctaws or any of its members. All of the parties are non-Indians. Any potential contract (or other "arrangement") at issue in this case concerns relationships between the parties to this action, not the Band or any of its members.

¶26. Next we find that the conduct of the parties to this action does not threaten or have any direct effect on the political integrity, economic security, health or welfare of the Band. Regardless of the outcome of this litigation, the Band will still own the casino; continue to act pursuant to the terms of its present contract with Boyd; and no threat to its "political integrity" may be discerned from the facts presented to us. The appellee has presented no facts establishing adverse consequences to the health or general welfare of the Band. Finally, no direct effect on the economic security of the Band can be predicted under the facts known to us. To the contrary, the only economic interests which can be directly affected by this litigation are the interests of the parties to the litigation. Neither the Mississippi Band of Choctaw Indians nor any of its members are parties.

¶27. We therefore find that the tribal courts of the Mississippi Band of Choctaw Indians lack jurisdiction of this cause of action. In so finding, the question of comity becomes moot.

¶28. **REVERSED AND REMANDED.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, McRAE AND ROBERTS, JJ., CONCUR. BANKS, J., CONCURS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**


    **BANKS, JUSTICE, CONCURRING IN PART:**

¶29. I join the result reached by the majority. I write separately because I believe that the opinion goes too far in declaring that the Tribal Court lacks jurisdiction of this claim. For me, it suffices to say that the Circuit Court of Hinds County did have jurisdiction and that no principle of comity required that it relinquish that jurisdiction. I join so much of the majority opinion as says that.

**LEE, C.J., JOINS THIS OPINION.**

**SMITH, JUSTICE, DISSENTING:**

¶30. Adhering to the premise that "Indian tribes cannot exercise power inconsistent with their diminished status as sovereigns," the majority finds that this case has no direct effect upon the political integrity, economic security, or the health and welfare of the Choctaw Tribe. The majority, relying upon *Montana v. United States*, 435 U.S. 544 (1981) (citations omitted), proclaims that *Montana* must be read in conjunction with *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191 (1978), which held that Oliphant, a non-Indian, could not be tried in a tribal court even though the incident occurred on tribal territory. *Oliphant*, 435 U.S. at 198.

¶31. I respectfully disagree with the majority. It is my view that out of respect for the sovereign nature of the Mississippi Band of Choctaw Indians, the Choctaw Tribal Court is the proper forum for the commencement of this cause of action, because both the political integrity and economic security of the Mississippi Band of Choctaw Indians is affected by the case *sub judice*. The majority's decision is fatally flawed. A major distinction exists between *Montana* and *Oliphant*, one is criminal, the other civil. Indeed, Federal statutes limit tribal authority regarding criminal charges, but the same is not true for civil matters. The cases are legion allowing tribal jurisdiction and authority over civil litigation. *Montana* controls, despite the majority's ill-advised attempt to weaken its' affect upon the case at bar.

¶32. The sovereign nature of the Choctaw Tribe of Mississippi has long been recognized by the government of the United States of America by virtue of numerous treaties, commencing with the Congress of Mobile in 1765 and concluding with the Treaty of Dancing Rabbit Creek in 1830. Although the unfavorable end result of practically all of these treaties involved both broken and empty promises by the federal government, the Choctaws, nevertheless, were dealt with by the federal government on a government to government basis. This same sovereign recognition of Native Americans by the United States continues today. *See* Executive Order of President Clinton, *Government to Government Relations with Native American Tribal Governments*, April 29, 1994, reprinted in Fed. Reg. Vol. 59, No. 85, May 4, 1995.

¶33. Mississippi's executive and legislative branches, on the other hand, have been slow to recognize the sovereign government of the Choctaw nation, especially the Mississippi Band of Choctaws. The judicial branch has been equally unpersuaded to recognize the Choctaw's sovereignty. In an exclusive jurisdiction of the Choctaw tribe issue, this Court declined to allow the Choctaw Tribal Court to decide the adoption status of two minor Indian children, adopted by a non-Indian couple. *See Matter of B.B.*, 511 So. 2d 918 (Miss. 1987). The Court stated, "Hence, even if this Court were to concede that the lower court erred in exercising jurisdiction over the adoption proceedings, *which it does not*, in any event the judge did conform and strictly adhere to the minimum federal standards governing adoption of Indian children with respect to parental consent, notice, service of process, etc." *Id.* at 921. (emphasis added). Simply put, the Court declined to recognize the exclusive jurisdiction of the Choctaw Tribal Court and Choctaw sovereignty. However, on appeal, the United States Supreme Court held that "an Indian tribal court [had] exclusive jurisdiction over the adoption and. . . .the Supreme Court must defer to the experience, wisdom, and compassion of the tribal court to fashion an appropriate remedy." *Mississippi Choctaw v. Holyfield*, 490 U.S. 30 (1993). The Supreme Court

reversed in **Holyfield** and on remand, the Choctaw Tribal Court arrived at the same conclusion and result as had the chancellor, i.e., that a non-Indian couple should be allowed to adopt the two Indian children.

¶34. The Mississippi Band of Choctaw Indians was not assimilated into the population of this state after the coercive treaty of Dancing Rabbit Creek, when the Choctaws supposedly agreed to give up their lands in Mississippi and move to Oklahoma. Rather, the federal government abdicated its responsibility to protect the Mississippi Choctaws from the State of Mississippi. *See **United States v. Johns***, 437 U.S. 634, 643, n. 8, 9 (1978). Trickery and broken promises abound throughout our government's treaties with the Indian Nations. While this Court cannot right past wrongs, we can correct our past failure and refusal to recognize Choctaw sovereignty by so holding in this case.

¶35. Equally unpersuasive are the paranoid fears of the plaintiff regarding the supposed bias, prejudice, or competency of the Choctaw Tribal Courts and Indian juries, a fear which is unsupported in this record and an affront to the Choctaw Nation. Allegations of similar supposed incompetence and bias have been held meritless by the United States Supreme Court in ***Iowa Mutual Ins. Co. v. LaPlante***, 480 U.S. 9, 19 (1987), wherein the Supreme Court stated, "We have rejected similar attacks on tribal court jurisdiction in the past." ***Id.***

***¶36.*** The Mississippi Band of Choctaws, as a sovereign political entity, maintains its own judicial system, i.e., the Choctaw Tribal Council, which has promulgated the Choctaw Tribal Code. The Choctaw Band is a separate sovereign, certainly capable of, and in fact has made substantive law and enforced that law within its own forums and jurisdiction. In ***Santa Clara Pueblo v. Martinze***, 436 U.S. 49, 55 (1978), the United States Supreme Court stated, "Indian Tribes are 'distinct, independent, political communities, retaining their original natural rights in matters of local self government.'"And so it goes for the Mississippi Choctaws.

¶37. The Mississippi Band of Choctaw Indians have a valid tribal government, a civil tribal court system, with juries and appellate rules and procedures. The Choctaw Tribal Court should have civil jurisdiction over the case *sub judice*. The Choctaw Tribal Code provides in part that ". . .the courts of the Mississippi Band of Choctaw Indians shall have jurisdiction over all civil actions," including civil actions where both parties are non-Indians, as long as the matter is one "in which the rights of the Tribe or its members may be directly affected." *See,* Tribal Code § 1-2-5 (2). The rights of the Choctaw Tribe are absolutely affected by this litigation.

¶38. The undisputed facts reflect that Choctaws own the Silver Star Casino and have contracted with Boyd Mississippi, Inc. to manage the facility and provide security. The Choctaw government has promulgated the gaming regulations effective for the operation of the casino. These regulations specifically govern the conduct of Silver Star employees, who are prohibited from gaming at the casino during off-duty hours.

¶39. Stuart Harrison, an employee of the casino who operated a crap table, was observed at a gaming area during off-duty hours, a violation of Choctaw Gaming Commission Regulations. Harrison was approached and asked by security personnel to accompany them to another location in the casino to discuss the situation with a supervisor. Harrison refused, resisted the officers, and was subdued and taken into custody. All underlying facts giving rise to Stuart Harrison's supposed cause of action occurred at the Silver Star Casino which is located on tribal lands of the Mississippi Band of

Choctaw Indians' Reservation in Neshoba County, Mississippi. Concerning the gaming regulations adopted by the Choctaw Gaming Commission, Harrison himself admits "This was the cause of the confrontation."

¶40. A substantial political function of the Choctaw government is to see that the Silver Star Casino flourishes as a growing business, yet at the same time, to maintain the Tribe's political and economic integrity. An employee violating the Choctaw's gaming regulations cannot be taken lightly, as such activity would adversely affect the public's perceived image of gaming fairness as well as the integrity of the Silver Star Casino.

¶41. The Choctaws thus have a substantial legitimate economic and governmental interest in the litigation of this case, based on the tribe's ownership of the casino and the violations of Choctaw Gaming Regulations promulgated by the Choctaw Gaming Commission. Based on the sovereignty of the Choctaw Tribe, the Choctaw Tribal Court is the proper forum for jurisdiction of this case.

¶42. Contrary to popular belief, federal tax dollars do not provide for the complete support of Indian tribes including the Choctaw Band. The Choctaws have sought means of self support, and have done so very successfully. To say that the Choctaws are "business minded" would be a vast understatement. They essentially are engaged in, as they put it, "growing businesses." One such very profitable business venture is the Silver Star Casino. Funds derived from this business are placed into the Choctaw government general fund account for the benefit of all Choctaw tribal members and help eliminate excess taxation and other government charges which would otherwise be required of the Choctaw tribe. The majority fails to note that a "substantial economic interest" directly affecting the Mississippi Band of Choctaw Indians is present in this case. However, equally convincing is the political aspect of the case which surfaces in the form of a violation of the Choctaw government's gaming regulation, admittedly the root cause of Harrison's problems on the day in question.

¶43. In the case at bar, the tribal court is the proper court for forum jurisdiction. This case has already been dismissed by the United States Federal Court for the Southern District of Mississippi. Under the doctrine of comity, the recognition of the judicial independence of another sovereign, courts should not exercise jurisdiction over civil cases where those cases are subject to tribal jurisdiction, until tribal remedies have been exhausted. *LaPlante* at 9, 10. In *Klammer v. Lower Sioux Convenience Store*, 535 N.W. 2d 379, 381 (Minn. App. 1995), the Minnesota Court of Appeals, relying on *LaPlante*, stated"The exhaustion requirement is a matter of comity; it is not a jurisdictional prerequisite." Moreover, in *LaPlante*, the Supreme Court noted, "Tribal courts play a vital role in tribal self-government and the federal government has consistently encouraged their development." 480 U.S. at 14-15. In *Kaul v. Wahquahboshkuk*, 838 F. Supp. 515 (D.Kan. 1993), that Court considering the exhaustion of tribal remedies, stated, "The federal courts created this rule 'because of Congress' strong interest in promoting tribal sovereignty, including the development of tribal courts.'" *Id.* at 517.

¶44. Because the present case involves a civil dispute between non-Indians is of little aid to Harrison. The United States Supreme Court in *Montana v. United States*, 450 U.S. 544, (1981), stated:

> A Tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within the reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the Tribe.

*Montana* at 565-66.

¶45. Courts have long recognized the importance of adhering to the authority and sovereignty of tribal courts where events involving civil disputes occur on "Indian territory." In ***Crawford v. Genuine Parts Co.***, 737 F. Supp. 1121 (D. Mont. 1990) (*citing **Montana v. United States**,* 450 U.S. 544, 566, 101 S. Ct. 1245, 1258 67 L. Ed. 2d 493 (1981)), the Supreme Court recognized that tribal courts have the inherent power to adjudicate civil disputes affecting the interests of Indians and non-Indians which are *based upon events occurring on a reservation*. (emphasis added). The ***Crawford*** Court noted that the tribal courts "possess the necessary attributes of sovereignty over both their members *and their territory*." ***Id.*** at 1124, (emphasis added). "Tribal authority over the activities of non-Indians on reservation land is an important part of tribal sovereignty." ***Wellman v. Chevron U.S.A. Inc.,*** 815 F. 2d 77 (9th Cir. 1987), *(citing **LaPlante**,* 107 S. Ct. at 976; ***Montana v. United States***, 450 U.S. at 565-566.) "Tribal courts presumptively have civil jurisdiction over disputes directly implicating tribal affairs or **arising on tribal reservations**." ***Stock West Corp. v. Taylor***, 737 F. Supp. 601 (D. Or. 1990) *(citing **Iowa Mutual Ins. Co. v. LaPlante**,* 480 U.S. 9,18 (1987)) (emphasis added).

¶46. Returning to the case at bar, we have a casino, wholly owned by the Mississippi Band of Choctaw Indians and unquestionably, a tribal business which contributes substantial funds to the Choctaws. Additionally, all alleged events and the actions of all parties occurred at the casino, which is located entirely on the tribal reservation territory. The Mississippi Band of Choctaw Indians was recognized as a Tribe pursuant to the Indian Reorganization Act of 1934. 18 U.S.C. § 1151(b) defines the territorial boundaries over which a Tribe possesses sovereignty. The Choctaw Tribal Court clearly has authority over reservation territory. These lands are "Indian Country"and unquestionably Choctaw territory as defined by federal statute. *See **United States v. John***, 437 U.S. 634, 57 L. Ed. 2d 489, 98 S.C.. 2541 (1978). The Choctaw Tribe has personal jurisdiction in civil matters, over "any person . . . *present within the Choctaw reservation*." *See* Tribal Code §  1-2-3(2) (a), (emphasis added). *See also* Tribal Code §  1-2-3(g) concerning the Tribe having personal jurisdiction in civil matters over "any person who commits a tortious act or engages in tortious conduct within the reservation. . ." ***Id.*** Tribal authority over both Stuart Harrison and Boyd Mississippi, Inc., is thus readily apparent and an important part of tribal sovereignty. This Court should therefore recognize the authority of the Choctaw Tribal Court.

¶47. The rights of the Choctaw Tribe are directly affected. Clearly, the political integrity of the tribe is affected due to the alleged violations of the Choctaw governments' Gaming Commission Regulations. Equally at stake is a substantial economic issue concerning the substantial financial proceeds derived from the operation of the Silver Star Casino and paid to the Choctaw Band for the benefit of the tribal members. We should recognize this case for what it actually is, an attempt at forum shopping. In recognition of the inherent power and sovereignty of the Choctaw Tribe, we should affirm the circuit judge and allow this case to commence in the Choctaw Tribal Court.

¶48. I respectfully dissent.

1. The area in Neshoba County was declared by Congress in 1939 to be held in trust by the federal government for the benefit of the Mississippi Choctaw Indians. *U.S. v. John*, 437 U.S. 634, 649 (1978). The declaration was followed in 1944 by Congressional approval of a constitution and by-laws as adopted by the Band, which also issued a proclamation establishing the reservation at that time.

2. The "center of gravity" test is more properly referred to as the "significant relationship" test. *See, e.g., Boardman*, 470 So. 2d at 1030 (stating that "[w]e apply the center of gravity test to each question presented, recognizing that the answer produced in some instances may be that the law of this state applies and on other questions in the same case the substantive law of another state may be enforceable.")

3. We are cognizant of the federal line of cases which analyze jurisdiction on a mere territorial basis. *See, e.g., Hinshaw v. Mahler*, 42 F.3d 1178, 1180 (9th Cir.)(finding concurrent jurisdiction between federal and tribal courts over tort arising between two non-Indians since tort occurred within tribal territory), *cert. denied*, 513 U.S. 988 (1994); *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9 (1987). However, we decline to adopt these authorities. We further note the line of Federal cases requiring the exhaustion of tribal remedies prior to review by Federal Courts. *See, e.g. National Farmers Union Insurance Companies v. Crow Tribe of Indians*, 471 U.S. 845, 855 (1985)*.* Since no companion case is pending in tribal court, this doctrine is not applicable in the case *sub judice*.